[L. A. No. 26244. In Bank. June 21, 1962.]

RELA ARDELL STASHER, Individually and as Administratrix, etc., Plaintiff and Appellant, v. HARGER-HALDEMAN, Defendant and Respondent.

24

Lee, La Vigne & Davis, B. T. Davis, Jr., and David J. Lee for Plaintiff and Appellant.

R. D. Sweeney and Cameron W. Cecil for Defendant and Respondent.

SCHAUER, J.—Plaintiff appeals from a judgment for defendant in an action (brought individually and as adminis-

tratrix of her husband's estate) to compel restitution upon claimed rescission of a conditional sale contract for the sale of an automobile and to recover all payments made thereunder to defendant.

Plaintiff contends that the subject contract was voidable at her instance because, as she would construe its language, it fails in certain respects to comply with the requirements of former Civil Code section 2982, subdivision (a).[1] We have concluded that the contract complies with that statute and hence that the judgment should be affirmed.

Defendant at all times material was a licensed automobile dealer. On January 15, 1956, plaintiff and her (now deceased) husband went to defendant's place of business and negotiated to purchase a 1956 Chrysler automobile. Defendant agreed to allow a discount of $632.63 on the price of the new car, to accept in trade a 1954 Chrysler with an agreed value of $1,600, and to pay off a balance of $1,648.10 owing on the old

---

[1] At the time here material the relevant provisions of section 2982, subd. (a), read as follows:

"Every conditional sale contract for the sale of a motor vehicle, with or without accessories, shall be in writing and shall contain all of the agreements between the buyer and the seller relating to the personal property described therein. It shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution. It shall recite the following separate items as such, in the following order:

"1. The cash price of the personal property described in the conditional sale contract.

"2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. . . .

"3. The amount unpaid on the cash price, which is the difference between Items 1 and 2.

"4. The cost to the buyer of any insurance, the premium for which is included in the contract balance.

"5. A description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance.

"6. The amount of the unpaid balance, which is the sum of Items 3, 4, and 5.

"7. The amount of the time price differential.

"8. The contract balance owed by the buyer to the seller, which is the sum of Items 6 and 7.

"9. The number of installments required to pay the contract balance, the amount of each installment, and the date for payment of the installments."

While section 2982, subd. (a), was repealed in 1961 as part of a comprehensive reformulation of the Automobile Finance Law (Stats. 1961, ch. 1626, p. 3534), its provisions were reenacted almost verbatim in new section 2982, subd. (a).

car. Two days later plaintiff's husband returned and signed the conditional sale contract. He was given a copy of the contract and took delivery of the car.

The pertinent portions of the subject contract provide:

"SCHEDULE OF INSTALLMENTS

"$105.19 on 2/28/56, $450.00 on 1/21/56, $300.00 on 1/27/56, "$100.00 on 1/30/56, $105.19 on 3/28/56, and $105.19 on the "28th of each month, after the date of the last payment above "specified for 34 months, . . .

"STATEMENT OF TRANSACTION

| | | | |
|---|---|---|---|
| "(1) | Cash Price | | $3456.00 |
| | Accessories | | 909.30 |
| | City Sales Tax | | |
| | State Sales Tax | | 111.99 |
| | | Total | 4477.29 |
| "(2) | Down Payment | | |
| | A. Net Agreed Value | 1600.00 | |
| | Less Payoff | 1648.10 Net | (48.10) |
| | 54 Yr. Make Chry. Motor No. | | |
| | B. Discount | | 632.63 |
| | C. Deposit Credit | | |
| | D. Cash | | |
| | | Total Down | 584.53 |
| "(3) | Unpaid Cash Price | | 3892.76 |
| "(4) | Insurance | | |
| "(5) | Fees (License & Vehicle Tax) | | 57.00 |
| "(6) | Unpaid Balance | | 3949.76 |
| "(7) | Time Price Differential | | 687.08 |
| "(8) | Contract Balance | | $4636.84" |

The parties found neither uncertainty nor lack of substance in the terms of the contract, and during the ensuing two and one-half years plaintiff and her husband made payments thereon without complaint and drove the car some 63,000 miles. However, after her husband's death, plaintiff brought this action in what appears to be an attempt to have a rescission judicially declared and, in any event, to compel restitution by defendant. She advances the contention that the contract fails in certain aspects of expression to comply with the requirements of former section 2982, subdivision (a), of the Civil Code (*ante*, fn. 1), and seeks to recover all payments made thereunder to defendant. At the time of trial a total of

$4,634.31 had been paid on the contract balance. The automobile has remained throughout in plaintiff's possession. Obviously plaintiff has not shown facts which establish a conventional rescission; she relies solely on claimed violation of the above cited statute.

The trial court found that the subject contract "complied strictly" with the provisions of items 1 to 4 and 6 to 8 inclusive of section 2982, subdivision (a), and that there was "substantial compliance" with the provisions of items 5[2] and 9[3] of that section. The court "concluded" (i.e., found) that plaintiff "[has] not been damaged by any act or omission of the defendant," and accordingly entered judgment for the latter.

The principal issue on appeal is whether the subject contract complies with the provisions of Civil Code section 2982, subdivision (a).[4] In *General Motors Accept. Corp.* v. *Kyle* (1960) 54 Cal.2d 101, 109 [5] [4 Cal.Rptr. 496, 351 P.2d 768], we adopted for descriptive purposes only the terms "formal" and "substantive" to distinguish between, on the one hand, the requirements of subdivisions (a) and (b) of section 2982, and on the other hand the requirements of subdivisions (c) and (d) of that section.[5] Definitive of the requirements of these sections we said in *Estrada* v. *Alvarez* (1952) 38 Cal.2d 386, 389 [2, 3] [240 P.2d 278], that "According

[2]The court specifically found that the contract sets forth item 5 of section 2982, subd. (a) "in the prescribed order"; that in so doing, however, the contract "contains no description and itemization of amounts, if any, which will actually be paid by the seller [to any public officer as fees], but the Court takes judicial notice of the fact that the State of California annually assesses a [single] charge for license and vehicle tax."

[3]The court also found that the contract sets forth item 9 of section 2982, subd. (a) "in the proper order" but that "there is an inconsistency appearing on the face of the contract because in the lower right hand corner reference is made to thirty-six installments [whereas] in the section entitled 'Schedule of Installments' five installments are referred to by defendant and the amount followed by a provision calling for the payment of $105.19 for thirty-four months, or a total of thirty-nine installments"; that "the total of the list of payments in the 'Schedule of Installments' is the full unpaid balance set forth on the contract"; and hence that "the figure '35' referring to the number of installments is a typographical error. . . ."

[4]For convenience the provisions of (now former) Civil Code section 2982, subd. (a), will hereinafter be referred to in the present tense.

[5]At the time here material subdivision (b) of section 2982 required the seller to furnish the buyer who paid for insurance under the contract with an exact copy of the insurance policy; subdivision (c) established the maximum permitted "time price differential" (finance and interest charges); and subdivision (d) provided for a refund credit to a buyer who satisfied his indebtedness under the contract before its maturity, and specified the permissible minimum amount of such refund credit.

to the *Carter* case [*Carter* v. *Seaboard Finance Co.* (1949) 33 Cal.2d 564 (203 P.2d 758)], 'The obvious purpose of the statute is to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost' (p. 573 [9a] of 33 Cal.2d); the form and requisites prescribed by the statute are mandatory; a contract which does not *substantially* conform thereto is unenforceable; and a buyer who has made payments to the seller under such a contract may recover them . . . .'' (Italics added.)

█ Similarly, in *City Lincoln-Mercury Co.* v. *Lindsey* (1959) 52 Cal.2d 267, 273 [6] [339 P.2d 851], we held that ''The fact that Lindsey [i.e., the buyer], when signing the contract, could ascertain the amounts of the missing items by calculation based on the figures appearing in the sales order does not show *substantial* compliance with subdivision (a) [of Civil Code section 2982].'' (Italics added.) █ Again, in *General Motors Accept. Corp.* v. *Kyle* (1960), *supra,* 54 Cal.2d 101, 109-110 [6], we reiterated that ''In *Carter* v. *Seaboard Finance Co.* (1949), *supra,* 33 Cal.2d 564, we held that *substantial* violations of formal requirements of subdivision (a) of section 2982 render the contract unenforcible by the seller [fn. omitted] and that a buyer who has made payments to the seller under such a contract can recover them.'' (Italics added.) (In accord are, e.g., *Foster* v. *Masters Pontiac Co.* (1958) 158 Cal.App.2d 481, 487-488 [6, 7] [322 P.2d 592]; *Adams* v. *Caruso Enterprises Inc.* (1955) 134 Cal.App.2d 403, 408 [1] [285 P.2d 1022]; *Millick* v. *Peer* (1955) 130 Cal.App.2d Supp. 894, 896 [1] [279 P.2d 212].)

█ Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of noncompliance and thereby transformed into a windfall for an unscrupulous and designing buyer. (See *Ridge* v. *Boulder Creek etc. School Dist.* (1943) 60 Cal.App.2d 453, 458 [2] [140 P.2d 990].) █ Section 2982 and its companion provisions of the Civil Code constitute a shield, not a sword, for the use of buyers in proper cases. Thus, in *General Motors Accept. Corp.* v. *Kyle* (1960), *supra,* 54 Cal.2d 101, this court made it clear that subdivision (a) of section 2982

must not "be applied in a manner which will give a windfall to the conditional purchaser" (*id.* at p. 106 [1]), and that the purpose of the statute "is merely to protect, not to enrich, the buyer in cases of purely formal violations" (*id.* at p. 113 [15]). As will hereinafter be shown, that language is particularly applicable to the case at bench.

We begin by considering the alleged instances of noncompliance with Civil Code section 2982, subdivision (a). The total "cash price" of the automobile stated in the subject contract as item (1) thereof is $4,477.29. Plaintiff suggests that the price for which the car was actually sold to her and her husband was $3,834.66, or $632.63 less than the stated "cash price," the difference representing a discount in that amount given by defendant. On this basis plaintiff contends that the contract does not correctly recite the "cash price" as required by item 1 of Civil Code section 2982, sudivision (a).

The contention cannot be sustained. "Cash price" is defined by (former) Civil Code section 2981, subdivision (e), as "the amount for which the seller would sell and transfer to the buyer unqualified title to the personal property described in the conditional sale contract, if such property were sold for cash at the seller's place of business on the date such contract is executed, and includes any applicable sales taxes."[6] In the context of installment sales, however, this definition appears to be an unfortunate one. The figure sought to be defined is actually the agreed sale price for the vehicle and its accessories (plus sales tax), a figure which is fixed by negotiation and, from the seller's viewpoint, ordinarily takes into account the *value to him* of the "time price differential" or finance charge. Yet the latter value, often considerable, is not reflected in the hypothetical "cash price" as defined above. Thus, in the case at bench, it would be pure conjecture to assume that defendant "would have sold" the Chrysler to plaintiff and her husband for $3,834.66 in cash, as that sum would not have included or reflected the stated finance charge of $687.08. But such speculation is here unnecessary. The sole reason for requiring determination of this hypothetical "cash price" is to facilitate the further computation of the "unpaid cash price" (item 3 of Civ. Code, § 2982, subd. (a)), the "unpaid balance" (*id.*, item 6), and the "contract bal-

---

[6]Except for the language quoted in footnote 8, *post*, the definition of "cash price" in new section 2981, subd. (e) remains essentially identical with that here quoted.

ance'' (*id.,* item 8). In the subject contract each of these three figures is correctly set forth; in particular, the ''unpaid cash price'' is shown as the difference between the ''cash price'' and the down payment, as required by the statute. Plaintiff does not claim that she and her husband had any doubts whatever as to the amount that defendant was charging them for the car and its accessories, or that the amount charged them was not the amount agreed upon by the parties. In these circumstances we conclude that the informational purpose of section 2982, subdivision (a), has been subserved, and hence that the contract complies with the statute in this respect. The situation is materially different from that presented in such cases as *City Lincoln-Mercury Co.* v. *Lindsey* (1959), *supra,* 52 Cal.2d 267, 273 [6], and *Adams* v. *Caruso Enterprises Inc.* (1955), *supra,* 134 Cal.App.2d 403, 408 [1], where the omitted or incorrectly stated figure was the ''time price differential,'' an item not ordinarily the subject of negotiation and far more complex and difficult to compute than any here in issue.

Plaintiff next contends that the subject contract does not correctly state the ''down payment'' as required by item 2 of section 2982, subdivision (a). The contention is untenable. The statute specifies an itemization showing ''whether [the down payment is] made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property.'' The contract here recites:

```
"(2)  Down Payment
       A. Net Agreed
          Value                1600.00
          Less
          Payoff               1648.10   Net  (48.10)
          . . . .
       B. Discount ........................ 632.63
       C. Deposit Credit ...................
       D. Cash ............................
          Total Down .................... 584.53"
```

While plaintiff and her husband did not ''make'' a down payment of $584.53 in currency or coin, the source and method of computation of this figure appear plainly on the face of the contract. The essential details in this respect are thus made explicit; and, as indicated above, plaintiff and her husband were well aware of the terms of their deal with defendant concerning the trade-in, the payoff on the old car and this dis-

count. It follows that in this respect also the contract complies with the statute. Unlike cases involving false or fictitious items in the statement of down payment (see e.g., *General Motors Accept. Corp.* v. *Kyle* (1960), *supra*, 54 Cal.2d 101, 106 [1]; *Lewis* v. *Muntz Car Co.* (1958) 50 Cal.2d 681, 683 [328 P.2d 968]; *Estrada* v. *Alvarez* (1952), *supra*, 38 Cal.2d 386, 388-389 [1]), the inclusion here of the "Discount" item could not reasonably mislead either the buyer or a third party subsequently financing the sale. There is nothing unlawful in the terms of the transaction which the parties negotiated; those terms, it appears, were faithfully recorded in the written contract. That being so, and all other requirements of the statute having been met, we fail to find any basis for rescission by plaintiff.

■ Plaintiff (relying on *General Motors Accept. Corp.* v. *Kyle* (1960), *supra*, 54 Cal.2d 101, 106 [1]) also contends that the contract does not sufficiently provide "A description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance." (Civ. Code, § 2982, subd. (a), item 5.) The contention is without merit, and finds no support in *Kyle*.[7] It will be remembered that the subject contract states as item (5) thereof, "Fees (License & Vehicle Tax) . . . . . .57.00." The relevant language of section 2982, subdivision (a), does not specifically require that license fees and vehicle registration fees be itemized independently of each other, but simply calls for a statement of the amounts if any which will actually be paid "to any public officer as fees. . . ." Both the license fee (Rev. & Tax. Code, §§ 10751, 10851) and the vehicle registration fee (Veh. Code, § 9250) are required by law to be paid to the same department of the state government, the Department of Motor Vehicles. The arrangement adopted in the contract with respect to the statement of such fees thus complies with the terms of section 2982, subdivision (a).[8]

[7]The contract in that case recited, "FEES PAID: Registration and Transfer $_____, Other $_____ $54.00." There was no explanation in the contract of the source of the latter figure, and the buyer had no way of knowing what fees the charge represented or even if it was in fact a charge for fees paid. We held that this omission, together with several other failures to comply with section 2982, subd. (a), rendered the contract unenforceable by the seller's assignee.

[8]That the separate listing of each fee paid to public officials is not considered by the Legislature to be vital to the protection of the buyer is indicated by the fact that in its 1961 reformulation of the Automobile Finance Law (*ante*, fn. 1) item 5 of former section 2982, subd. (a),

■ Plaintiff further contends that the subject contract fails to recite correctly "The number of installments required to pay the contract balance" (Civ. Code, § 2982, subd. (a), item 9). As noted above, the "Statement of Transaction" recites at its conclusion that the contract balance is "Payable in 36 installments, the amount and date of each installment appearing in the schedule of installments," while the latter schedule itemizes a total of 39 installments rather than 36. The trial court found on sufficient evidence that the total of 39 set forth in the "Schedule of Installments" is correct, and that "the figure '36' referring to the number of installments [in the "Statement of Transaction"] is a typographical error. . . ." Such an error, of course, does not render the contract voidable at the instance of the buyer (*cf*. Civ. Code, former section 2982, subd. (e) ["an accidental or bona fide error in computation"]).

Plaintiff's remaining complaints concerning the sufficiency of the contract are so lacking in merit as to require no discussion.

■ As noted at the outset plaintiff and her husband had full use of the automobile here involved for more than two and one-half years, and drove it some 63,000 miles. To allow plaintiff now to rescind the contract and recover all payments made thereunder (less appropriate offsets) because of mere unsubstantial imperfections in complying with the letter (while fully complying with the substance and spirit) of section 2982, subdivision (a), would be to give plaintiff an undeserved windfall at defendant's expense and in disregard of the true intent of the Legislature.

We do not suggest that imperfections in either the form or substance of motor vehicle contracts are to be encouraged. Any error or omission in writing the contract, even if apparently unimportant in itself, conceivably could combine with

---

appears as part of the definition of "cash price" in new section 2981, subd. (e), reading as follows: " 'Cash price' . . . includes . . . the *total* amount paid or to be paid to any public officer in connection with the transaction." (Italics added.) Compare *Murray* v. *Lure* (1956) 147 Cal.App.2d 176, 179 [1] [305 P.2d 75], where the court affirmed a judgment enforcing a conditional sale contract which recited, among other items, "D.M.V. fees $24." And in *Millick* v. *Peer* (1955), *supra*, 130 Cal.App.2d Supp. 894, 895-896 [1] (disapproved on another ground in *Baum* v. *Aleman* (1956) 139 Cal.App.2d Supp. 929, 932 [1a] [293 P.2d 162]), the court held that a charge of $24 for "TR. Lic." in a conditional sale contract for the sale of an automobile amounted to "substantial compliance with the provisions of section 2982 of the Civil Code. . . ."

some other circumstance to become important. The legislation in question is intended to be rigid and exacting. It is so designed because the State found that there were some automobile dealers (even as there are some dishonest persons, at least from time to time, in every business or profession) who were seeking not to render an honest service but, rather, deliberately to overreach, oppress and mulct any trusting customer. Because a law must be universal in its application to any class, and because it must be drafted to govern the acts of the worst offender in the class, it follows that all members of the class, the great majority of whom are honest and respected automobile dealers, some of them probably serving the third or fourth generation of appreciative customers, must suffer the inconvenience of being scrupulously careful in the preparation of contracts, in the performance of all things required by the subject legislation, and in keeping a record of the same.

We understand the burden imposed on these businessmen, as well as the basis for the law, and we understand also that in some of their relationships with customers—or pretending customers—it will be the dealer rather than the customer who needs protection. The case at bench appears to be of the latter type. When appropriate facts are shown courts should be equally as alert to protect the one party to a contract as the other.

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.