# IN THE OREGON TAX COURT

## GUGLER et al
### *v.*
### BAKER COUNTY
### EDUCATION SERVICE DISTRICT
### (TC 2340)

Jesse R. Himmelsbach, Jr., Baker, represented plaintiffs.

Joel S. DeVore, Mautz, Hallman & DeVore, Pendleton, represented defendant.

Decision for defendant rendered November 26, 1986.

**CARL N. BYERS, Judge.**

Plaintiffs are interested taxpayers who seek to void the 1985-86 tax levy of defendant. Defendant is an educational service district (ESD) created under and subject to ORS chapter 334. An ESD provides services to the common school districts within its geographical boundaries, which usually coincide with county boundaries. Although ESDs may conduct some classes, they are not like common school districts but deal with students as agents for the common school districts. In addition to providing services to common school districts, usually instruction for handicapped students and other specialized programs, an ESD functions as a boundary board to resolve disputes and to deal with mergers of the common school districts. ESDs have power to levy taxes within their geographical boundaries. (ORS 334.270.) There are four separate common school districts within defendant's boundaries. Consequently, defendant is governed by a board of seven directors, one director from each of the common school districts and three directors elected at large. (ORS 334.025.) The board of directors gives general direction and policy to the district. The actual administration is directed by a full-time superintendent and other subordinate employees. (ORS 334.225.)

Plaintiffs attack defendant's levy on numerous grounds. The scope of plaintiffs' dispute and dissatisfaction extends far beyond the issues raised in this case.[1] In this case, plaintiffs' claims relate to improper accumulation of funds,

---

[1] Reliance on broad constitutional arguments in plaintiffs' brief is a clue to the real dispute: Plaintiffs disagree with the decisions of the ESD Board. The prescribed remedy for that problem is the electoral process, not judicial review.

budgeting procedures, lack of notice and assorted other violations of the local budget law. It is apparent, however, that much of plaintiffs' dissatisfaction arises out of the defendant's purchase of a building and the decision to remodel that building. The parties previously litigated issues relating to the purchase of the building in circuit court, Union County case No. 86-02-30434.[2] Because of this court's limited but exclusive jurisdiction of tax matters, the court will limit its discussion to those issues appropriate to this court.

This is not a case in which to dawdle. The legislature has expressly directed that cases of this kind be given priority "over all other cases pending before the Oregon Tax Court." (ORS 294.520.) Accordingly, the court has diligently analyzed the evidence submitted herein and has considered the issues as follows:

*Constitutionality of ORS 334.025(3) and ORS 334.240(1).* Plaintiffs contend that ORS 334.025(3), providing for the election of the seven directors of an education service district, is unconstitutional:

> "In an education service district which has fewer than five common school districts, one director shall be elected from each of the common school districts and the additional directors shall be elected from the district at large." (ORS 334.025(3).)

There is no dispute as to the following facts: 75 percent of the voters within defendant's area live within School District 5-J, less than 5 percent of the voters reside in School District 16-J, four percent in School District 30-J, and less than 15 percent in School District 61. On the basis of this distribution of population, plaintiffs contend that the above-quoted statute is unconstitutional because it violates the one man-one vote principle of the Constitution as to the voters in School District 5-J.

Defendant responds that the Tax Court is without jurisdiction to consider this issue since it deals with a question of apportionment. However, it would appear that if the statute is unconstitutional, a tax levy imposed by a board created

---

[2] Evidence from the circuit court case, including the trial transcript, has been introduced as evidence in this case. Although the cases involve different issues, the court has carefully reviewed all of such evidence, including the 552 pages of transcript.

under such statute would be voidable. After considering both the case law and the facts, the court finds that the statute is not unconstitutional.

■ The one man-one vote principle is applicable to the states by virtue of the Fourteenth Amendment. It is clear, however, that it is limited to legislative bodies and is not applicable to those whose functions are primarily administrative. *Sailors v. Kent Board of Education,* 387 US 105, 87 S Ct 1549, 18 L Ed 2d 650 (1967).[3]

Furthermore, even if the principle were applicable to defendant, it does not appear that the principle was violated. That is, although 75 percent of the voters reside in School District 5-J and only one school board member is elected from that district, it is possible for all three of the at-large board members to be also elected from 5-J. This would permit voters in School District 5-J to elect four out of the seven directors. ORS 334.100(4) provides for majority rule and a majority constitutes a quorum. Thus, the electors of School District 5-J can, through the ballot, control defendant. Moreover, under the statutory scheme, even if School District 5-J does not elect four directors from its district boundaries, it has the power to veto any proposal by defendant to provide services to school districts. ORS 334.175(3).

Plaintiffs make basically the same claims with regard to ORS 334.240(1), which provides for the appointment of members to the ESD budget committee. In this instance, plaintiffs claim that School District 5-J is under-represented because all school districts have equal numbers of board members to select from. The same authorities and reasons discussed above answer plaintiffs' contentions as to the constitutionality of ORS 334.240(1).

*Budget Committee Members.* ORS 294.336 specifies that the governing body of a municipal corporation, of which defendant is one, shall appoint a budget committee. The committee's function is to conduct public hearings on proposed

---

[3] In *Sailors v. Kent Board of Education,* the county board performed much the same functions as defendant; that is, it appointed a superintendent, prepared an annual budget and levy of taxes, furnished consulting or supervisory services to constituent school districts, conducted cooperative educational programs on behalf of constituent school districts at their request, employed teachers for special education programs and dealt with school district boundary problems.

budgets and approve or make recommendations with regard to the proposed budgets. In addition, ORS 334.240(1) specifies that for ESDs, the budget committee members must be either a member of the ESD board or a board member of one of the common school districts in the ESD. Plaintiffs claim that two members of the budget committee were not qualified to be on the committee and therefore the resulting tax levy was void. The two members whose status is challenged are Donald Oakes and Leah Kerr.

Plaintiffs assert that Donald Oakes was not a resident of the district as required by ORS 334.090(5). From the evidence presented, the issue turns on whether Mr. Oakes was a resident of Ironside, Oregon, or a resident of Ontario, Oregon. A brief summary of the evidence on this question is as follows: Mr. Oakes was born, raised and has worked all his life on the family ranch in Ironside. After he married and had children, he established a second residence in the City of Ontario. His reason for doing so was to afford his children educational opportunities at good schools. His children, who are both now adults, most of the time lived in Ontario. Both children graduated from high schools in Ontario. Mr. Oakes' wife also taught school in Ontario and spent most of her time there. However, Mr. Oakes testified that he continued to spend most of his time in Ironside, including nights. There was no telephone service to Ironside until recent years. In 1979-1980, Mr. Oakes built a new home in Ironside of approximately 5,500 square feet. When Mr. Oakes' residency in Ironside was challenged, the county elections clerk sought verification and apparently was satisfied that Mr. Oakes was a registered voter of Ironside.

Based upon all of the evidence, the court finds that Donald Oakes was a legal voter and resident in Ironside and therefore qualified as a member of the budget committee.

Plaintiffs established that Leah Kerr was not a qualified member of the budget committee because she was not a member of the ESD board or a board of one of the common school districts as required by ORS 334.240(1). However, defendant submitted an analysis of the budget committee and the votes of its members which demonstrated that even if Mr. Oakes and Mrs. Kerr were disqualified, their votes would not have changed the results of any of the actions taken

by the budget committee. (Exhibit V.) In view of this, the court finds that this is not a ground for voiding the levy.

*Defective Notices.* Plaintiffs claim that defendant failed to timely publish its notice of a budget meeting and the publication of the summary of the budget. Notice of the first meeting of the budget committee annually must be published "[n]ot less than eight days and not more than 14 days prior to the meeting." (ORS 294.401(1).) The evidence showed that the notice was published January 22, 1985, for the budget meeting on January 29, 1985, or seven days prior to the meeting. (Exhibit B.)

Similarly, a summary of the budget document must be published "not less than 15 days and not more than 25 days prior to the date of the meeting" at which the budget is to be adopted by the board of directors. (ORS 294.421(1).) In this case, the notice was published on June 11, 1985, for a meeting to be held June 25, 1985, or only 14 days prior to the meeting. (Exhibit O.)

The superintendent Donald Currey testified that the reason for the late publication in both instances was his failure to properly count the number of days. He testified that the notices were delivered to the newspaper office timely and could have been published earlier except for his instructions.

As an additional ground, plaintiffs assert that the notice of the budget meeting was also defective in that it failed to state where the budget document was available. Plaintiffs believe that the law requires the budget document to be made available for public inspection from the time of the publication of the notice until the meeting. By contrast, the notice indicated that "a copy of the budget document will be available at 2090 Fourth Street at the time of the meeting."

■ Plaintiffs are correct in that it appears the intent of the statute is to give the public an opportunity to examine the proposed budget prior to the meeting. It is not adequate to wait until the time of the meeting before a copy is made available to the public. However, plaintiffs presented no evidence that this defect in the notice deprived any taxpayer of an opportunity to examine the budget document. The general tenor of the testimony and evidence indicated that the ESD board and staff were attempting to make all public documents

available to the public on a timely basis. In the absence of any evidence that members of the public requested an opportunity to examine the budget and were denied that opportunity, the court will not void a levy on that ground. On the whole, considering all of the evidence concerning the notices published, the court finds that they were done in good faith and in substantial compliance with the statutes.

*Announcement of Subsequent Budget Meeting.* ORS 294.406(2) requires that during the initial meeting of a budget committee (the date of which must be published in the newspapers), the committee must "announce the time of the next meeting if any."[4] Plaintiffs complain that at the meeting of the budget committee held on May 30, 1985, the chairperson announced that the next meeting would be held on Wednesday, June 5. However, in fact the budget committee met on June 4, 1985.

The evidence showed that at the meeting held on May 30, 1985, the budget committee was unable to act for lack of a quorum. After polling the members who were present as to possible meeting dates, the chair announced that the next meeting was tentatively set for Wednesday, June 5. Later, when a telephone poll of all the members of the budget committee was taken it appeared that it would be necessary to meet on June 4, 1985, in order to have a quorum. The June 4 meeting date was then published in both local newspapers under their calendar of events (Exhibit B) and was also announced over the local radio station. It was noted that plaintiff Gugler attended such meeting and spoke to the issue of salaries of some of the ESD employees.

The obvious purpose of the statutory requirement is to facilitate public attendance at the budget committee meeting. In these particular circumstances, where a meeting could not be held for lack of a quorum, it is not unreasonable to anticipate that some accommodation to schedules might have to be made. Although it appears that one member of the budget committee was not informed of the meeting, probably due to his having been out of town (Exhibit 32), there was no

---

[4] It is questionable whether the announcement requirement of ORS 294.406(2) applies to all meetings of the budget committee as opposed to just the initial meeting specified by ORS 294.401(1).

evidence that the public was misinformed or unable to attend the meeting. Although such errors are regrettable and are to be avoided, in this instance it does not justify the drastic measure of voiding the levy.

*Inadequate Budget Message.* ORS 294.391 requires that a budget message be prepared and delivered at the meeting of the budget committee at the time that the budget document is delivered to the committee. The statute requires that the budget message:

"(1)  Explain the budget document;

"(2)  Contain an outline of the proposed financial policies of the municipal corporation for the ensuing year;

"(3)  Describe in connection with the financial policies of the municipal corporation, the important features of the budget document;

"(4)  Set forth the reason for salient changes from the previous year in appropriation and revenue items; and

"(5)  Explain the major changes in financial policy."

Plaintiffs complain that defendant's budget message was inadequate and failed to comply with the statutory requirements. Defendant's superintendent, Don Currey, testified that the message was prepared as outlined in the budget manual. Mr. Currey testified that basically there were no changes in programs from prior years and therefore the budget was much the same.

■  The obvious purpose of the budget message is to orient the lay reader of the budget as to its outline, policies, programs and to call attention to changes. The court has examined the budget message, as found in the adopted budget, (Exhibit Q) and finds in some respects that it is of minimal assistance in understanding the budget document. On the whole, however, it does satisfy the enumerated requirements of the statute.

*Addendum to Budget Message False and Deceptive.* Defendant's superintendent testified that because the defendant decided to purchase a building after the budget message had been prepared, he prepared an addendum to the budget message for the purpose of notifying everyone of the plans to purchase the building. That addendum reads as follows:

"Due to recent action by the Board of Directors of the Baker County Education Service District in acquiring a new facility to house its operations according to the Oregon statutes and to assist in a cooperative program of education services and related education services for Baker County, the Board now would like to add to the proposed budget for the 1985-86 school year the estimates for the remodeling and yearly operation of the newly acquired ESD Office. Estimates of rents to be received are also included into this budget. The Board would also like to address some additional programs and/or services and will be including them into the budget prior to the approval of the budget. When these programs and/or services are determined by the board, an additional detailed expenditure sheet will be added to the budget document of the Baker County ESD." (Exhibit Q.)

Plaintiffs complain that the above addendum is false and deceptive in the following particulars:

(1) It implies that the new building was required by statute.

(2) It implies that the budget committee or board could not make an estimate of remodeling costs earlier.

(3) It implies that the new building was already acquired.

(4) It implies that disclosure of details of additional programs could not be made earlier.

(5) It implies that detailed estimates of expenditures were not available at the time the addendum was prepared.

It appears from the record that the addendum was prepared and presented on April 10, 1985. At that point in time the board had decided to purchase the new building and had signed an earnest money agreement. However, a separate taxpayer lawsuit was pending, seeking to enjoin the purchase of the building. Thus, the purchase had not closed. It should also be noted that it appears from the evidence that the budget committee did not recommend a particular remodeling option until six days after the addendum was prepared. The board did not approve the recommended remodeling option until June 4, 1985.

In many ways the disagreement of the parties in this

area comes from irreconcilable points of view. Defendant maintains that it could not provide details for programs and remodeling costs until the board had decided on which options and which programs were to be adopted. Plaintiffs, on the other hand, appear to believe that detailed estimates of the alternatives should be given, enabling them to more fully participate in the decision-making process. However, the nature of a proposed budget is not to set forth alternatives but to set forth a proposed program. The public may give imput, but by electing representatives it has delegated the authority to act in its behalf.

After examining the addendum to the budget message, the court finds that the inferences to be drawn therefrom are not deceptive or false in light of the facts found by the court. Although the phrase "according to the Oregon statutes" could be read as implying that the statutes required a new facility, a more reasonable interpretation is that the operations of the ESD must be housed according to Oregon statutes. In any case, the phrase is ambiguous and is not viewed by the court as being false or deceptive.

*Unlawful Accumulation of Funds.* Paragraph 9 of Plaintiffs' Third Amended Complaint reads:

"The board and superintendent (budget officer) of the defendant had decided to make major policy changes from those adopted the previous year, and also to make major expenditures in furtherance of such new policies. The budget document did not comply with the requirements of ORS 294.352 in that true estimates of such expenditures were not made available to the public in a proper and timely manner."

It is not clear from the above-quoted allegation or the evidence whether plaintiffs are complaining that the estimates were not made or were made but were not "true estimates" or were made but were not available to the public in a timely fashion, or all three. It does seem clear from other portions of the complaint that plaintiffs feel aggrieved by the resulting accumulations and amounts set aside in defendant's contingency fund. The focus of the dispute appears to be on the remodeling expenditures which were included in the budget at the last minute.

The evidence adduced showed that defendant has accumulated excess funds over a period of time. Although in

excess of $300,000 was accumulated and apparently not needed, Mr. Tompson testified that the budget failed to properly disclose only about $59,000 of these excess funds. Superintendent Tompson recommended disclosure of the excess funds and to return a portion of the funds by reducing the next levy. However, by that time the board had solidified its decision to purchase rather than rent its required quarters and saw a need for some of the carryover. Also the board was reluctant to simply deplete the defendant's accounts.[5] The chairperson, Mr. Doser, testified that the board continued to make efforts to verify expenses but continued to experience carryovers despite these efforts. Mr. Currey testified in the circuit court that:

" [T]he Board's philosophy when I came was to use as much of the carryover money as they could to reduce the levy. * * * They had reduced that levy the year that Mr. Tompson was here, the year that — last year. And they did it again this year." (Exhibit 41, at 223.)

In these circumstances, it is not unusual for taxpayers to believe that the board had some secret plan to thwart the public's opposition to a new building. However, the evidence supports the view that the accumulations resulted from a lack of financial control and a clear understanding of the financial process. If the board had understood the financial documents better and sooner, there might not be a dispute today. Certainly the board's interest in changing buildings was no secret. The Building Reserve Fund had been slowly added to over several years. (Exhibit 40, at 24.) Likewise, the accumulations were no secret, although apparent only to those willing to spend the time to study the records. (Exhibit 41, at 364-365.) In short, plaintiffs complained not because the board was devious, but because it disagreed with the proposal that the ESD stay in the old building.

*Contingency Fund.* Defendant's proposed budget contained a contingency fund of $50,000. After public hearing and review, the budget as adopted for 1985-86 contained a contingency fund of $25,000. Plaintiffs contend that both

---

[5] It is apparent that the board's reluctance to reduce the next tax levy stemmed from a misunderstanding of its tax base. While such a misunderstanding is evidence of the board's failure to properly educate itself, it is not evidence of an intent to deceive the public. To the contrary, it manifests a responsible attitude to avoid hamstringing the district in the next year.

amounts were unreasonable and not based on past experiences.

Superintendent Currey testified that the proposed $50,000 contingency was based on the expectation that certain "high cost" children were expected in the district. Later, defendant learned that the region would bear some of the expenses of these children and so the general contingency fund was reduced to $25,000. Superintendent Currey indicated that at the time the budget was adopted, the needs were still not certain and he anticipated that the district might have to hire specialists.

■ It is true that less than $5,000 was expended out of the general contingency fund during the years 1980-81 through 1983-84. If this were the only "experience" to be considered, plaintiffs would prevail on this point. However, the statute cannot be read so narrowly as to permit contingency funds based only upon past expenditures. The financial waters of the district prior to Superintendent Tompson's taking over in 1984-85 can best be described as muddy. During the 1984-85 year, Superintendent Tompson recommended a contingency fund of $33,500. Based on the expectation of having additional needs in the district, which appears to have been borne out by the actual expenditures from the general fund contingency during the year in question, it would appear that the amounts budgeted were not unreasonable. It should be noted that although plaintiffs, as well as the court, might disagree with the decision of the board in this particular matter, disagreement alone does not constitute violation of the statute. Where judgment must be exercised by the administrative board or body, the questioned decision must fall into the area of unreasonable before the court will overturn it. *Rogue River Pack. v. Dept. of Rev.,* 6 OTR 293 (1976).

■ On the whole, the court finds that the levy in question was prepared "in substantial compliance" with the statutes. This is not to say that there were no errors or that defendant could not have done a better job. It simply means that the ESD board, budget committee and superintendent attempted to comply with the statutes and in so doing actually complied "in respect to the substance essential to every reasonable objective of the statute." *Stasher v. Harger-Haldeman,* 58 Cal

2d 23, 372 P2d 649, 652 (1962), quoted in *Dept. of Rev. v. Umatilla County,* 10 OTR 309 (1986).

Although plaintiffs may not "win" this lawsuit, they have performed a valuable function. As a result of their challenges, inquiries and demands for justification, defendant has clarified its policies, improved its procedures and is more open to the public it serves. On the other hand, those who voluntarily give of their time and talents as members of the board and budget committee of defendant are to be commended for their efforts in this regard. Judgment will be entered dismissing plaintiffs' complaint. No costs awarded.