Filed 12/17/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOYCE FLANNERY,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>VW CREDIT, INC.,<br><br>   Defendant and Respondent. | D063937<br><br><br>(Super. Ct. No. 37-2012-00102894-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy Taylor, Judge. Reversed.


Law Office of Barry D. Mills, Barry D. Mills; Law Office of Michael Doukas and Michael Ernest Doukas for Plaintiff and Appellant.

Reed Smith, Jesse L. Miller, Lisa B. Kim and Anne M. Grignon for Defendant and Respondent.

Plaintiff and appellant Joyce Flannery filed a complaint which alleges that by virtue of defendant and respondent VW Credit, Inc.'s (VW) failure to comply with provisions of California's Vehicle Leasing Act (VLA) (Civ. Code, § 2985.7 et seq.), VW

violated California's Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) (the Rosenthal Act) and California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (the UCL). VW filed a demurrer to the complaint, which the trial court sustained without leave to amend. On appeal, Flannery contends the court erred by applying the doctrine of substantial compliance to consumer protection laws.

VW has moved to dismiss the appeal as untimely. We deny the motion to dismiss and reverse the dismissal. Following the trial court's ruling on its demurrer, VW sought and received entry of an order dismissing the complaint and provided Flannery with notice of entry of the order; however, before the time in which to appeal from the dismissal expired, VW asked the trial court to vacate the dismissal and enter a new dismissal that included VW's costs. The trial court granted VW's request and entered an order vacating the first dismissal and ordering entry of a second dismissal, which included VW's costs. VW then served Flannery with notice of entry of the second dismissal. Thereafter, Flannery filed a notice of appeal from the *second* dismissal. VW argues that the notice of appeal was untimely because it was not filed within 60 days after service of notice of entry of the *first* dismissal; VW contends that, notwithstanding the literal meaning of the trial court's order vacating the first dismissal, we should interpret the order as simply amending the first judgment to add VW's costs and thereby render Flannery's notice of appeal untimely. We decline to do so. We interpret the trial court's order literally; the first dismissal was vacated by the terms of the trial court's order, and a second dismissal was entered from which Flannery filed a timely notice of appeal.

With respect to the merits, we reverse. Although the doctrine of substantial compliance has been employed when doing so avoids injustice and is consistent with the purposes of a particular statute, those considerations are not present here, where VW failed to provide consumers with notice of their right to an appraisal upon early termination of their automobile leases in the language prescribed by Civil Code section 2987. As we explain, the Legislature has expressed its intent that the VLA provisions in dispute here be strictly enforced. In addition to the Legislature's evident preference, strict enforcement encourages greater care on the part of lessors when providing statutory notices and avoids repeated resort to judicial construction with respect to which part of a verbatim notice prescribed by the Legislature is material and which is not. Importantly, strict enforcement of the VLA does not provide consumers with any unfair advantage or benefit but only relieves them of liability for any deficiency.

Because the parties' briefing here has been directed solely to VW's obligations under the VLA, we do not reach the question of whether VW's alleged violation of the VLA will support any relief under provisions of the Rosenthal Act and the UCL.

I

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Flannery was the lessee of a Volkswagen Jetta. VW was the lessor and, in the middle of 2011, VW repossessed the Jetta. Following the repossession, VW sent Flannery a notice that attempted to comply with the requirements of Civil Code section

3

2987, subdivision (d)(2)(B).[1]  By its terms, subdivision (d)(2)(B) of section 2987 requires that lessors of vehicles which have been repossessed give the lessees a notice that contains the following statement:  "'The amount you owe for early termination will be no more than the difference between the Gross Early Termination Amount stated above and (1) the appraised value of the vehicle or (2) if there is no appraisal, either the price received for the vehicle upon disposition or a greater amount established by the lessor or the lease contract.

"'You have the right to get a professional appraisal *to establish the value of the vehicle for the purpose of figuring how much you owe on the lease.*  If you want an appraisal, you will have to arrange for it to be completed at least three days before the scheduled sale date of the vehicle.  The appraiser has to be an independent person acceptable to the holder of the lease.  You will have to pay for the appraiser.  The appraised value will be considered final and binding on you and the holder of the lease.'"[2]  (Italics added.)

---

[1]     All further statutory references are to the Civil Code unless otherwise indicated.

[2]     In the alternative, the lessor's notice may, if the lessor is willing to be bound by the wholesale value of a recognized used vehicle value guide, contain the following statement:  "'The amount you owe for early termination will be no more than the difference between the Gross Early Termination Amount stated above and (1) the appraised value of the vehicle or (2) if there is no appraisal, the wholesale value specified in a recognized used vehicle value guide.

"'You have the right to get a professional appraisal to establish the value of the vehicle for the purpose of figuring how much you owe on the lease. If you want an appraisal, you will have to arrange for it to be completed at least three days before the scheduled valuation date.  The appraiser has to be an independent person acceptable to the holder of the lease.  You will have to pay for the appraiser. The appraised value will be considered final and binding on you and the holder of the lease.'"

4

If a lessor fails to provide a notice that complies with section 2987, subdivision (d)(2), a lessee is not liable for any deficiency. (§ 2987, subd. (d)(3).)

The notice VW sent Flannery did not contain all of the language required by the statute. VW's notice deleted the phrase "to establish the value of the vehicle for the purpose of figuring how much you owe on the lease." Thus, VW's notice read: "The amount you owe for early termination will be no more than the difference between the Gross Early Termination Amount stated in this notice and (1) the appraised value of the vehicle or (2) if there is no appraisal, either the price received for the vehicle upon disposition or a greater amount established by the lessor or the lease contract. You have the right to get a professional appraisal; you will have to arrange for it to be completed at least three days before the scheduled sale date of the vehicle. The appraiser has to be an independent person acceptable to the holder of the lease. You will have to pay for the appraiser. The appraised value will be considered final and binding on you and the holder of the lease."

Relying on VW's failure to send her a notice that complied with the requirements of section 2987, Flannery filed a complaint against VW, which alleged she represented an unknown class of lessees to whom VW had sent the defective notice and from whom VW had thereafter collected or attempted to collect unauthorized deficiencies. She alleged VW's collection or attempts to collect the deficiencies violated the Rosenthal Act and the UCL and had damaged her and other class members.

5

VW demurred to the complaint. VW argued that its notice substantially complied with the requirements of section 2987, subdivision (d)(2), and, therefore, it was authorized to collect deficiencies from lessees to whom it had sent the notice.

After a hearing on November 16, 2012, the trial court sustained VW's demurrer without leave to amend. On January 10, 2013, the trial court entered an order of dismissal with prejudice. VW served Flannery with notice of entry of the dismissal on January 11, 2013.

At the request of VW, the trial court set aside the January 10 dismissal and entered a judgment of dismissal with costs on February 26, 2013. On March 19, 2013, VW served Flannery with notice of entry of the order setting aside the January 10 dismissal and entering judgment of dismissal with costs.

On May 15, 2013, Flannery filed a notice of appeal from the February 26 judgment.

DISCUSSION

I

VW has moved to dismiss Flannery's appeal. VW contends: (1) entry of the January 10 order of dismissal commenced the time for appeal; and (2) the February 26 order merely amended the January 10 order and, therefore, did not restart the time to file an appeal. We disagree.

A notice of appeal from a judgment must be filed on or before the earliest of: (1) 60 days after the trial court's mailing of the notice of entry of judgment, (2) 60 days after a party's service of the notice of entry of judgment, or (3) 180 days after the entry of

6

judgment. (Cal. Rules of Court, rule 8.104(a)(1)-(3).) When a judgment is vacated and then reinstated, the time to appeal the judgment begins to run after reinstatement. (*Lantz v. Vai* (1926) 199 Cal. 190, 193 (*Lantz*); *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 58 (*Matera*).) In *Lantz*, a judgment in a quiet title action was entered on August 19, 1925, finding that neither party was the owner of a disputed parcel of real property; the judgment was thereafter vacated and a substitute judgment, finding the plaintiff was not the owner, was entered on October 14, 1925. In finding that the time for appeal ran from the reinstated judgment, and not the vacated judgment, the court stated: "[W]e are of the opinion that no appeal lies from the judgment of August 19. The effect of the order vacating and setting aside the judgment was to destroy it." (*Lantz*, at p. 193.) Similarly, in *Matera*, the trial court vacated a default judgment but then concluded that the defendants were not entitled relief from the judgment and reinstated the judgment. (*Matera*, at pp. 54-55.) The court rejected the plaintiff's argument that the defendant's time to appeal was tied to entry of the vacated judgment. Rather, the court held that the defendant's time to appeal commenced after the judgment was reinstated. (*Id.* at p. 58.) The court stated: "Defendants had no right to appeal from the vacated judgment." (*Ibid.*)

Here, the trial court's February 26 order states: "It is hereby ordered that: [¶] 1. The Order of Dismissal entered on or about January 9, 2013 *be set aside*; [¶] 2. A Judgment of Dismissal be entered in its place; [¶] 3. Defendant VW Credit, Inc. be awarded costs in the amount of $517.75." (Italics added.) As in *Lantz* and *Matera*, following entry of the trial court's February 26 order, defendants could not appeal from

7

the January 10 order of dismissal.  (*Lantz, supra*, 199 Cal. at p. 193; *Matera, supra*, 145 Cal.App.4th at p. 58.)  It had been destroyed.  (*Ibid.*)

VW contends the February 26 judgment is an amended judgment that merely adds attorney fees and costs and thus did not restart the time to appeal.  (See, e.g., *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 220-223; *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583.)  Unlike *Torres* and *Laraway*, where fees and costs were added to final judgments previously entered and there was no dispute the subsequent judgments merely made amendments to the original judgments, here, by the express terms of the order VW itself drafted, the January 10 dismissal was *set aside*. Neither the express language of the order VW itself prepared nor the general rule favoring preservation of the right to appeal (see *Lippert v. AVCO Community Developers, Inc.* (1976) 60 Cal.App.3d 775, 779) permit us to interpret the order as a mere amendment to the January 10 judgment.

VW also relies on *Kimball Avenue v. Franco* (2008) 162 Cal.App.4th 1224 for the proposition that vacating and reentering a judgment does not restart the time for appeal. *Kimball* is plainly distinguishable.  There, the court's order vacating the prior judgment was itself void, and, hence, the earlier judgment was never vacated.  (See *Id.* at pp. 1227-1228.)  Here, the court had jurisdiction to set aside the judgment since no appeal had been filed and less than 60 days had elapsed since notice of entry of judgment.  (See 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 95, pp. 667-668 [trial courts retain jurisdiction over a cause until notice of appeal is filed or lapse of time].)

8

In sum, because VW served notice of entry of the new judgment of dismissal on Flannery on March 19, 2013, Flannery's May 15, 2013 notice of appeal was timely.

II

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

III

"'"Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute." [Citation.] Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form. When the plaintiff embarks [on a course of substantial compliance], every reasonable objective of [the statute at issue] has been satisfied.' [Citation.]" (*Cal-*

9

*Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 668.)

Importantly, in considering application of the doctrine, "[o]ur primary concern is the objective of the statute." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 72 (*Malek*).)

As we indicated at the outset, we have concluded that the doctrine of substantial compliance does not apply to the appraisal statement vehicle lessors are required to provide to lessees of repossessed vehicles by section 2987, subdivision (d)(2). We rely in the main on the court's opinion in *Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997 (*Rojas*) as well as the opinions in *Malek* and *Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567 (*Imbler*).

*Rojas* is the most directly pertinent authority with respect to whether the doctrine of substantial compliance applies to the requirements of the VLA. In *Rojas*, the court considered related provisions of the Rees-Levering Motor Vehicle Sales and Finance Act (Rees-Levering) (Civ. Code, §§ 2981 et seq., 2981.9). The plaintiff in *Rojas* purchased a car from the defendant and planned to make a down payment totaling $2,000: a $1,000 payment three weeks after he took delivery of the car, a $500 payment two weeks later, and two $250 payments thereafter. Under the sales finance form required by Rees-Levering, $1,750 of these payments should have been listed as "Deferred Down Payment" and $250 accounted for elsewhere. Instead of complying with the requirements of Rees-Levering, the seller inaccurately listed the $2,000 as a simple down payment made at the time of sale. The plaintiff sued the seller of the car and the lender who had been assigned the sales contract and alleged the erroneous characterization of

10

the down payment violated Rees-Levering and supported claims under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) and Business and Professions Code section 17200. The defendants filed a demurrer to the complaint and argued that the seller had substantially complied with Rees-Levering. The trial court sustained the demurrer without leave to amend, finding that the alleged violation of Rees-Levering was "trivial." (*Rojas*, *supra*, 212 Cal.App.4th at pp. 1000-1001.) The Court of Appeal reversed and found that Rees-Levering required strict compliance with its prescribed sales finance form and that the seller's error entitled the buyer to rescission. (*Rojas*, at p. 1005.)

The Court of Appeal noted that under Rees-Levering a vehicle sales finance agreement which does not meet its requirements is unenforceable, but that the Legislature had recently made an exception for errors by the seller in setting forth government fees. The court found that the recent amendments which eliminated the right of rescission for mislabeling of government fees implicitly reinforced the mandatory nature of the statute's other requirements: "Under the long-standing statutory interpretation principle '*expressio unius exlcusius alterius est*' (to express one thing is to exclude others), the Legislature's declaration that a sales contract remains enforceable if its only erroneous nondisclosure involves certain governmental fees [citation], means that rescission remains available for the contract's noncompliance with other disclosure requirements—for example, truthful and accurate disclosure of the downpayment." (*Rojas*, *supra*, 212 Cal.App.4th at p. 1005.) The court concluded that an interpretation of an earlier version of the statute, which permitted application of the doctrine of substantial compliance (see *Stasher v.*

11

*Harder-Haldeman* (1962) 58 Cal.2d 23, 28-29 (*Stasher*)), was no longer controlling in light of the more recent amendments. (*Rojas*, at p. 1005.) Rather, the plaintiff "could state a claim for relief under the act based on [the seller's] misstatements about [the] downpayment even if the trial court deemed the misstatements 'trivial.'" (*Ibid*.)

Provisions of the VLA give rise to a very similar statutory interpretation. By its terms section 2987 requires that, in addition to providing a lessee with the verbatim statement prescribed in section 2987, subdivision (d)(2), a repossessing seller must also provide a number of calculations with respect to amounts owed on the lease. (See § 2987, subd. (d)(2)(B).) Under section 2987, subdivision (d)(3), a lessee has no liability to a lessor for any deficiency if the lessor has not complied with the notice requirements of section 2987, subdivision (d), *except* if noncompliance involves a bona fide error in the calculations required by subdivision (d)(2)(B). A deficiency *is* enforceable, notwithstanding an erroneous calculation, if the lessee receives or gives notice of the erroneous calculations before the vehicle is sold. (§ 2987, subd. (d)(3)(A)-(D).) Thus, as in *Rojas*, here the express exception to strict enforcement of *one* part of the statute gives rise to the inference that the Legislature intended that the remaining requirements of the statute are to be strictly enforced. (*Rojas*, *supra*, 212 Cal.App.4th at p. 1005.)

In addition to the legislative inference that the notice requirements of the VLA, including the specified appraisal statement, are to be strictly enforced, practical jurisprudential considerations counsel against application of substantial compliance here. Our review of the legislative history of the VLA does not disclose any expressed goal in requiring use of the specific language required by the statute. Rather, we can only infer

that the Legislature chose language which it believed would effectively convey to lessees their right to an independent appraisal. Plainly, as a consequence of employing prescribed language, the Legislature has relieved all vehicle lessors of the burden and risk of determining what is an appropriate notice to lessees of their appraisal rights. In this context, application of the doctrine of substantial compliance would shift that burden and the risk of interpretative error to us and to any other court confronted with a similar abbreviation of the prescribed statement. We see no need to take on that burden or risk or to create precedent for imposing them on other courts throughout the state. Our unwillingness to do so grows out of the fact that taking steps to assure the required text appears in the required notice is not, in our view, in any manner burdensome. Indeed, requiring strict compliance has the benefit of encouraging all lessors to take due care in assuring that their notices meet the straightforward requirements of the statute.

Moreover, the consequences to lessors of strict enforcement of the VLA are not unfair and provide no undue benefit to lessees. The failure to provide notice simply prevents lessors who have repossessed and sold vehicles from also recovering a deficiency from lessees. (See § 2987, subd. (d)(3).) This is in marked contrast to the equitable considerations that in some measure led the court in *Stasher*, *supra*, to employ substantial compliance in applying an earlier and superseded version of Rees-Levering. In *Stasher*, the seller made a down payment error similar to the one considered in *Rojas*, but the buyers did not assert the defect for two and a half years, after they had paid almost the entire $4,600 purchase price and after they had driven the car a total of 63,000 miles. The court found that, in these circumstances, permitting rescission and the return

13

of the purchase price would "give plaintiff an undeserved windfall at defendant's expense and in disregard of the true intent of the Legislature." (*Stasher*, *supra*, 58 Cal.2d at p. 33.) A lessor's inability to recover a deficiency following the sale of a repossessed vehicle provides lessee's with no such undue windfall.

Strict enforcement of the appraisal statement required by the VLA is also consistent with the holdings in *Malek* and *Imbler*. In *Malek* and *Imbler*, the courts held that arbitration provisions in health care service plans were not enforceable because they did not comply with a statutory requirement that the provisions be prominently displayed "immediately before the signature line." (See Health & Saf. Code, § 1363.1.) In *Malek*, the court found that, although "in the appropriate case" substantial compliance with the statute might permit enforcement of an arbitration provision which did not meet all the requirements of the statute, the defendant's arbitration clause did not, in any event, substantially comply because it did not assure a knowing waiver of the right to a jury trial. (*Malek*, *supra*, 121 Cal.App.4th at pp. 72-73.) The court found that such a knowing waiver was one of the statutory goals of the governing statute.

Most of the other cases that VW relies on in asserting application of the doctrine of substantial compliance involve markedly different statutory requirements with markedly different legislative goals. (See, e.g., *Costa v. Superior Court* (2006) 37 Cal.4th 986, 1014 [substantial compliance applies to constitutional and statutory provisions related to elections]; *Cal-Air Conditioning, Inc. v. Auburn Union School District*, *supra*, 21 Cal.App.4th at p. 662; *Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384 [substantial compliance applies in public

14

work and public contracting setting]; *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 11 [procedures governing objections to undertaking and bonds subject to substantial compliance].)  None involve a statutory notice procedure that attempts to protect consumers by requiring that businesses give consumers a prescribed statement.

The only case that supports VW's contention is the unreported memorandum in *Eger v. VW Credit, Inc.* (S.D.Cal. 2007, No. 05-CV-2224-L(WMc)) 2007 U.S.Dist. Lexis 6812.  There, the court, with little analysis and without the benefit of *Rojas*, concluded that VW's failure to accurately provide the appraisal statement required by the VLA was subject to the doctrine of substantial compliance.  For the reasons we have discussed, we decline to follow *Eger*.

In sum then, contrary to the trial court's ruling, Flannery has alleged a violation of the VLA and VW's demurrer should have been overruled.

IV

The parties have not briefed and we have not determined whether, and to what extent, such a violation of the VLA will support Flannery's claims under the Rosenthal Act or the UCL.  For the guidance of the parties and the trial court on remand however, we nonetheless note that the Rosenthal Act limits the remedies available to consumers. In particular, section 1788.30 states in pertinent part:  "(a) Any debt collector who violates this title with respect to any debtor shall be liable to that debtor *only in an individual action*, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.  [¶] . . . [¶]

15

"(e) A debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation."

We also note that under the UCL a private plaintiff's remedies are "generally limited to injunctive relief and restitution." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179; see Bus. & Prof. Code, §§ 17203, 17206.)

## DISPOSITION

VW's motion to dismiss the appeal is denied. The judgment is reversed and remanded for further proceedings consistent with the views we have expressed. Flannery to recover her costs of appeal.

_____

BENKE, Acting P. J.

WE CONCUR:


_____

NARES, J.


_____

AARON, J.

16