Filed 12/26/13  Pulido v. Gaestel CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ADOLFO PULIDO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> R. J. GAESTEL, INC. et al., <br><br> Defendants and Respondents. | F063388 & F063914 <br><br> (Super. Ct. No. CU149576) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Harry L. Jacobs, Commissioner.

Law Offices of Robert Padrick, Robert Padrick; The Meridian Law Firm, Jaimie Mak; Rosner, Barry & Babbitt, Hallen D. Rosner, Christopher P. Barry and Angela J. Patrick for Plaintiffs and Appellants.

Canelo, Wilson, Wallace & Padron and James H. Wilson for Defendants and Respondents.

-ooOoo-

Appellants Adolfo Pulido and Margarita Pulido, purchased a used Honda Accord from respondent R. J. Gaestel, Inc., doing business as Merced Honda (Merced Honda), through a conditional sale contract. Accordingly, the transaction was governed by the Automobile Sales Finance Act (ASFA). (Civ. Code,[1] § 2981 et seq.)

Approximately 15 months later, appellants demanded remediation or rescission of the sale contract on the ground that it violated certain ASFA provisions. Thereafter, appellants filed the underlying lawsuit seeking rescission of the sale contract, restitution and damages. Appellants also claimed respondents violated the Consumers Legal Remedies Act (CLRA) (§ 1750 et seq.) and the requirement that a buyer who negotiates in Spanish be provided with a Spanish copy of the entire contract (§ 1632).

Following a bench trial, the court ruled in favor of Merced Honda and the holder of the sale contract, respondent American Honda Finance Corporation (Honda Finance). The court concluded that appellants had not complied with the rescission requirements under the ASFA and therefore had elected to keep the contract in force. The court also found the CLRA was inapplicable because respondents had not engaged in unfair or deceptive practices. The court awarded attorney fees to respondents as the prevailing parties.

Appellants contend the trial court incorrectly applied the ASFA and the CLRA. Appellants further dispute the validity of the attorney fee award.

As a matter of law, appellants are not entitled to relief under the ASFA, the CLRA or section 1632. Moreover, respondents are entitled to attorney fees. Accordingly, the judgment will be affirmed.

---

[1] Statutory references are to the Civil Code unless otherwise specified.

# BACKGROUND

Merced Honda purchased a repossessed 2003 Honda Accord from an auto auction dealer on December 9, 2004. The auction dealer estimated that fees of $504 were due to the Department of Motor Vehicles (DMV). On January 7, 2005, Merced Honda posted $310 with the DMV for past due fees and penalties relating to this vehicle.

On January 8, 2005, appellants went to Merced Honda. They wanted to trade in a 2005 Honda Civic that they had purchased from Merced Honda in October 2004 and purchase a larger vehicle. Appellants were shown the 2003 Honda Accord and began negotiating with Merced Honda salesmen to purchase this vehicle. These negotiations were primarily in Spanish.

After several failed attempts to secure financing for a proposed sale, Honda Finance approved the agreement reached by the parties on January 11, 2005. Appellants advised the salesman they could not afford to make the $1,500 cash downpayment. Appellants requested they be allowed to make payments on the downpayment portion of the transaction and the salesman agreed.

Merced Honda prepared the conditional sale contract in both English and Spanish. Appellants gave Merced Honda two checks for the downpayment, one for $300 dated January 11 and one for $1,200 dated February 11, 2005. Merced Honda agreed to hold the January 11 check until January 14 and to hold the February 11 check until February 18. However, the contract reflected that appellants made a $1,500 cash downpayment on January 11. Regarding fees payable to the DMV, the contract disclosed a charge of $500 as an estimated amount for license fees and that registration, transfer and titling fees were included.

On January 19, 2005, Merced Honda sent an additional $210 to the DMV to cover fees on the Honda Accord. On January 26, the DMV issued a reconciliation report stating that the total amount of fees due was $274. On January 31, Merced Honda issued

3.

a check to appellants for $246, the difference between what appellants had paid in fees and what the DMV had charged.

Although Merced Honda held appellants' checks as promised, both checks were dishonored. In March 2005, appellants gave Merced Honda $1,500 in cash to replace those checks. Merced Honda did not charge appellants for the dishonored downpayment checks.

By letters dated April 4, 2006, to Merced Honda and Honda Finance, appellants, through their counsel, complained of ASFA and CLRA violations. Specifically, appellants accused Merced Honda of "[o]vercharging for vehicle license fees and failing to refund the overcharge; [¶] [o]vercharging for smog abatement fees and failing to refund the overcharge; and [¶] [f]ailing to properly disclose deferred down payments on retail installment sale contracts." Appellants demanded that Merced Honda and Honda Finance remedy these violations within 30 days of their receipt of the letter. Honda Finance had purchased the sale contract from Merced Honda.

Honda Finance replied that, as the assignee of the contract, it would defer to Merced Honda and thus would not respond to appellants' demands for remediation or rescission until such time as Merced Honda informed it that appellants' claims had merit.

Merced Honda responded on April 25, 2006, and pointed out that the excess fees had been refunded to appellants. Merced Honda also enclosed an amended contract to correct the error of not separately listing the deferred downpayment. The amended contract stated that $300 had been paid at contract signing and $1,200 had been deferred.

On May 10, 2006, appellants responded to Merced Honda. Appellants noted the overcharge had been returned but stated that a dispute remained as to the nondisclosure of the deferred downpayment. Appellants further asserted that Merced Honda's attempt to correct the contract was untimely.

In July 2006, appellants filed the underlying action. They sought rescission of the sale contract, restitution and damages under the ASFA and CLRA based on Merced

4.

Honda's failure to disclose the deferred downpayment. In June 2009, appellants filed a first amended complaint that alleged additional statutory violations based on Merced Honda having bundled the license fees with the registration, transfer and titling fees.

The case was tried to the court beginning in March 2010. The court rendered its judgment in August 2011. Appellants continued to drive the Honda Accord throughout the litigation. However, appellants stopped paying on the vehicle loan after October 2007. In December 2007, Honda Finance "charged off" this loan with a balance of approximately $16,700.

The trial court ruled in favor of respondents. The only remedy provided by the ASFA is rescission of the contract at the option of the buyer. The court concluded that, by continuing to use the vehicle for over four years during the litigation, appellants elected not to rescind the contract and thus could not prevail under the ASFA. The court further found that appellants were not entitled to relief under the CLRA because respondents did not use unfair methods or deceptive practices in selling the vehicle to appellants. Thereafter, the court awarded respondents attorney fees and costs in the amount of $54,771.25.

## DISCUSSION

The material facts are primarily undisputed. Accordingly, we independently review the interpretation of the governing statutes and the application of the statutes to the undisputed facts. (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 997 (*Nelson*).)

1. *Appellants are not entitled to relief under the ASFA.*

   *a. The ASFA.*

The ASFA is a consumer protection law governing the sale of motor vehicles where the buyer finances some, or all, of the purchase price. (*Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1002 (*Rojas*).) The ASFA was enacted to

5.

increase protection for the unsophisticated consumer and provide incentives to dealers to comply with the law. (*Nelson, supra,* 186 Cal.App.4th at p. 999.)[2]

The ASFA protects motor vehicle buyers from abusive selling practices and excessive charges by requiring full disclosure of all cost items. (*Nelson, supra,* 186 Cal.App.4th at pp. 999-1000.) The dealer must disclose, in a single document, all the terms and conditions of sale. (*Rojas, supra,* 212 Cal.App.4th at p. 1002.) This disclosure requires the dealer to itemize various components of the sale, including the purchaser's downpayment and the fees to be paid to a public official such as vehicle license and registration fees. (§ 2982, subd. (a)(2), (6).) In itemizing the downpayment, the "amount of any portion of the downpayment to be deferred" must be separately stated. (§ 2982, subd. (a)(6)(D).)

The ASFA's requirements are mandatory. (*Bermudez v. Fulton Auto Depot, LLC* (2009) 179 Cal.App.4th 1318, 1323 (*Bermudez*).) If the dealer or subsequent holder of the note violates specific disclosure requirements in the AFSA, unless the violation was the result of an accidental or bona fide error in computation, the contract is unenforceable. If the violation is not corrected, the buyer *may* recover from the seller the total amount paid pursuant to the terms of the contract. (§ 2983, subd. (a); *Nelson, supra,* 186 Cal.App.4th at p. 1010.)

Nevertheless, the buyer's remedy is limited. "[T]he buyer may elect to retain the motor vehicle and continue the contract in force, or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle." (§ 2983.1, subd. (d).) However, the buyer may recover the total amount paid *only* if he or she elects to rescind the contract. (*Nelson, supra,* 186 Cal.App.4th at p. 1010.) The object of the ASFA is to protect the buyer, not to provide a windfall. (*Id.* at p. 1011.)

---

[2] Appellants' request for judicial notice of ASFA legislative history is granted.

### b. The ASFA violations.

It is undisputed that the sale contract did not disclose the deferred downpayment. By not disclosing the deferred downpayment, Merced Honda violated the ASFA. (*Rojas, supra,* 212 Cal.App.4th at p. 1002.) After being notified of this error, Merced Honda attempted to correct the contract as permitted by section 2984. However, the amended contract was still incorrect. It reflected a $300 cash downpayment and a $1,200 deferred downpayment whereas the entire downpayment was deferred.

Regarding the fees to be paid to the DMV, the contract estimated a total of $500 for license, registration, transfer and titling. Merced Honda based this number on the estimate given by the auto auction dealer when Merced Honda purchased the vehicle.

A dealer does not violate the ASFA by estimating the vehicle license fees so long as the dealer acts in good faith and returns the excess, if any, to the buyer. (*Bermudez, supra,* 179 Cal.App.4th at pp. 1324-1325.) That is what occurred here. Merced Honda estimated the fees based on the information it had and promptly refunded the excess to appellants. However, Merced Honda did violate the ASFA by not itemizing these fees. The ASFA requires that the vehicle license fees be stated separately from the registration, transfer, and titling fees. (§ 2982, subd. (a)(2).)

As noted above, an ASFA violation renders the contract unenforceable and the buyer may either retain the motor vehicle and continue the contract or rescind the contract and return the vehicle. (§ 2983.1, subd. (d).) Economic damage is not a prerequisite for rescission. (*Rojas, supra,* 212 Cal.App.4th at p. 1005.)

The parties disagree on whether, and to what extent, Merced Honda violated the ASFA. Merced Honda admits it violated the ASFA by not listing the downpayment as deferred. However, Merced Honda asserts that it corrected this violation as is permitted under section 2984. According to Merced Honda, this correction was timely and, although the amended contract listed $300 of the $1,500 down payment as cash rather than deferred, substantially complied with the ASFA. Appellants disagree and further

7.

assert that, because Honda Finance was the holder of the contract, Merced Honda had no authority to correct the contract and thus its attempt to do so was ineffective.

The parties also dispute the effect of the DMV fees on the transaction. Appellants contend the contract was unenforceable because the vehicle license fees were combined with the registration, transfer and titling fees. Appellants acknowledge that Merced Honda refunded the excess fees. Nevertheless, appellants argue that a $43 penalty imposed by the DMV should not have been included in the fees they paid. This penalty was based on a failure to timely notify the DMV of the sale of the vehicle by the auto auction dealer to Merced Honda. In response, Merced Honda contends that it substantially complied with the requirement to itemize DMV fees. In making this argument, Merced Honda notes that contracts entered into on or after January 1, 2012, are not unenforceable based on the bundling of DMV fees into one entry. (§ 2983.1, subd. (e).) Merced Honda further asserts that the $43 penalty was properly passed on to appellants.

However, this court need not untangle and resolve these issues. For purposes of this opinion, we will assume that Merced Honda violated the ASFA as asserted by appellants.

### c. *Appellants did not effectively rescind the contract.*

If based on ASFA violations a buyer elects to rescind the sale contract, he or she must make the election and return the vehicle *with reasonable diligence.* (§ 2983.1, subd. (d).) Upon rescission, the buyer may recover the total amount paid pursuant to the contract from the seller subject to an equitable offset for the buyer's use of the vehicle. (§ 2983; *Nelson, supra,* 186 Cal.App.4th at pp. 1010, 1012.)

It is undisputed that appellants gave effective notice of their election to rescind the contract. However, appellants did not return the vehicle with reasonable diligence as required by section 2983.1, subdivision (d). Appellants acknowledge that they did not

return the vehicle but assert they were not required to do so during the pendency of the litigation.

In general, the right to rescind a contract may be waived by continued use of the subject product. (*Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 897 (*Ibrahim*).) However, with motor vehicles it has been held that, within the context of the Song-Beverly Act, the so called "Lemon Law," and the California Uniform Commercial Code, "reasonable continued use … does not, as a matter of law, prevent the buyer from asserting rescission." (*Ibrahim, supra,* at pp. 884, 897.) As explained by the court in *Ibrahim*, this position "is based upon the judicial recognition of practical realities -- purchasers of unsatisfactory vehicles may be compelled to continue using them due to the financial burden to securing alternative means of transport for a substantial period of time." (*Id*. at pp. 897-898.) In *Nelson,* when discussing the equitable discretion the court has under the ASFA to set an offset for the rescinding buyer's use of the vehicle, the court noted that, if the seller refuses to remedy the situation forcing the buyer to sue, "[w]hile the action is pending, the buyer has no choice but to use the car." (*Nelson, supra,* 186 Cal.App.4th at p. 1013.)

The distinguishing factor in this case is that, in addition to failing to return the car, appellants stopped making payments on the loan. Appellants made their last payment to Honda Finance in October 2007. At that time, the loan balance was over $16,000. Nevertheless, appellants continued to use the car for at least another four years. Accordingly, the "financial burden" justification for not returning the car does not exist. Appellants were not forced to pay for both the Honda Accord and its substitute at the same time. Rather, appellants had the free use of the car during the pendency of the litigation.

Rescission is an equitable remedy. (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1144.) One of the fundamental principles of equity jurisprudence is that one who seeks equity must do equity. (*Dool v. First National Bank* (1929) 207 Cal. 347, 351.)

9.

This rule is applied because of the broad principle that equity is peculiarly a form of conscience.  As such, equity will not give relief that will enable a party to escape his or her obligation.  (*Id*. at p. 352.)

Here, appellants' failure to both return the car and make the loan payments is inconsistent with the equitable nature of rescission.  If appellants were permitted to rescind the transaction at this stage, they would escape their obligation to pay for their continued use of the car for four years.  Under these circumstances, appellants have waived their right to rescind this contract based on the ASFA violations.  They neither returned the car with reasonable diligence nor were excused from this requirement during the pendency of the litigation based on the financial burden of obtaining a replacement vehicle.

Appellants further argue that rescission was not their only remedy under the ASFA.  According to appellants, they had a right to recover their finance charges from Honda Finance without returning the car under section 2983.1, subdivision (b).

Section 2983.1, subdivision (b), provides "if a holder acquires a conditional sale contract without actual knowledge of" the seller's ASFA violation, "the contract shall be valid and enforceable by the holder except the buyer is excused from payment of the unpaid finance charge, unless the violation is corrected as provided in Section 2984." Here, however, assuming this section applies, i.e., Honda Finance acquired the contract without actual knowledge of Merced Honda's ASFA violations, Honda Finance did not successfully enforce the contract.  Appellants stopped making any payments to Honda Finance in 2007.  Since no payments were made, there was no unpaid finance charge to excuse.  Accordingly, appellants are not entitled to relief under section 2983.1, subdivision (b).[3]

---

[3]     In its judgment, the trial court stated that the ASFA did not apply to this case because appellants did not return the vehicle with reasonable diligence.  However, the

10.

**2.** *Appellants are not entitled to relief under the CLRA.*

The CLRA provides individual consumers with a remedy against merchants employing certain deceptive practices in connection with the sale of goods or services. (*Nelson, supra,* 186 Cal.App.4th at p. 1021.) To protect consumers, the CLRA sets forth 24 proscribed "unfair methods of competition and unfair or deceptive acts or practices." (§ 1770, subd. (a).)

Appellants argue that Merced Honda violated the CLRA by "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." (§ 1770, subd. (a)(14).) According to appellants, Merced Honda misrepresented that a $1,500 cash downpayment was made on the date of sale, appellants owed license fees of $500, and no registration, transfer or titling fees were due as part of the sale. Appellants further assert that charging them for the DMV penalty was prohibited by law.

CLRA relief is limited to those consumers who suffer damage. Thus, causation is a necessary element of proof. (*Buckland v. Threshold Enterprises. Ltd.* (2007) 155 Cal.App.4th 798, 809.) "Accordingly, 'plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.'" (*Ibid.*) Moreover, the plaintiffs must establish that they actually relied on the misrepresentation. (*Nelson, supra,* 186 Cal.App.4th at p. 1022.)

Here, appellants requested that their downpayment be deferred. Thus, appellants cannot establish that they relied on the misrepresentation in the contract regarding the downpayment. Further, Merced Honda did not deceive appellants about the license fees. The contract stated that $500 was an estimate and that it included the registration, transfer

trial court corrected this misstatement at a postjudgment hearing explaining that its holding was that appellants' failure to return the vehicle with reasonable diligence resulted in a waiver of their right to rescission under the ASFA.

11.

and titling fees.  Finally, Merced Honda had no knowledge of the $43 penalty assessed by the DMV either when it estimated the fees on the contract or when it returned the excess fees to appellants.  The DMV computed the fees due and did not provide Merced Honda with a breakdown of those fees.  Accordingly, appellants cannot state a CLRA claim. Merced Honda did not mislead or deceive appellants and appellants did not rely on any of the alleged misrepresentations.

**3.      *Appellants are not entitled to relief under section 1632.***

Under section 1632, if a contract is negotiated primarily in Spanish, the seller must deliver a Spanish translation of the contract to the buyer.  (§ 1632, subd. (b).)  If the seller fails to comply with this section, the buyer may rescind the contract.  (§ 1632, subd. (k).)

Here, the sale was negotiated primarily in Spanish and appellants were given a Spanish translation of the conditional sale contract.  However, the separate "buyer's guide," i.e., the information on the car window, is also part of the contract.

Merced Honda was unable to find and produce a copy of the Spanish language version of the buyer's guide and appellants claim they did not receive one.  Appellants therefore argue it is undisputed that they did not receive a Spanish translation of the buyer's guide.  However, Merced Honda's finance manager testified that, although he could not specifically recall this sale, when he prepares a contract in Spanish his practice is to also prepare the buyer's guide in Spanish.  He believed he prepared a Spanish buyer's guide for appellants and posited that this buyer's guide was misplaced.  Thus, this fact is in dispute.  Accordingly, we apply the substantial evidence standard of review to this issue.  (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.)

The trial court did not make a specific finding on the applicability of section 1632. Nevertheless, we presume the trial court followed the law and that its judgment is correct on matters as to which the record is silent.  (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.)  Based on the finance manager's testimony regarding his

12.

custom and practice in preparing Spanish versions of the buyer's guide, the record supports the finding that a Spanish buyer's guide was provided to appellants.

In any event, the remedy for a section 1632 violation is rescission of the contract. As discussed above, appellants waived any right of rescission.

### 4. *Respondents' pretrial tender attempt was ineffective.*

On the first day of trial, respondents moved to amend their answer to allege that they had tendered an amount of money that would cover all of appellants' damages. Respondents' counsel explained the purpose of this tender was to be deemed the prevailing party under section 2983.4, and thus be entitled to, and avoid paying, attorney fees. Section 2983.4 provides that reasonable attorney fees and costs shall be awarded to the prevailing party and that "[w]here the defendant alleges in his answer that he tendered to the plaintiff the full amount to which he was entitled, and thereupon deposits in court, for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a prevailing party within the meaning of this section."

Respondents then tendered $24,000 to appellants under section 2983.4. Respondents' counsel explained that this was the total amount appellants paid on the contract plus prejudgment interest. Appellants' counsel responded that such a tender is an irrebuttable admission that the obligation was owed and on that basis they would move for judgment on both the CLRA and the ASFA causes of action. Respondents' counsel then stated that if the court was inclined to rule that appellants were still entitled to claim attorney fees, respondents wished to withdraw the tender in full.

The trial court concluded that, without including something for attorney fees at this stage in the proceedings, the tender was not sufficient. The court then permitted respondents to withdraw their tender offer. The court further held that respondents did not admit liability. The court interpreted the tender as a settlement offer that appellants did not accept. Accordingly, the court denied respondents' motion to amend their answer.

13.

Appellants contend the trial court erred in allowing respondents to withdraw their tender. According to appellants, respondents' tender was an irrebuttable admission of indebtedness and liability and respondents should be held responsible for the consequences of that tender.

"A tender is an offer of performance made with the intent to extinguish the obligation." (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385.) When properly made, a tender puts the other party in default if he or she refuses to accept it. (*Ibid.*) However, to be valid, a tender must be one of full performance and must be unconditional. (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580.)

The rules governing tenders are strictly applied. "'"The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction."'" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.)

Here, respondents' tender was neither unconditional nor of full performance. It was conditioned on respondents not being responsible for any of appellants' attorney fees. Because the tender offer did not include anything for appellants' attorney fees, the trial court determined that it was insufficient. Thus, respondents' tender was not valid.

Further, in light of the circumstances under which the tender was offered, the trial court did not abuse its discretion when it permitted respondents to withdraw the tender. In moving to amend respondents' answer to the complaint, counsel explained he advised respondents that he did not think they were going to lose this case, but, "there are no guarantees in this business." Because appellants were asking for $150,000 in attorney fees at the settlement conference, counsel recommended amending the answer and making the tender to insulate respondents from being required to pay appellants' attorney fees. Thus, this tender was not an admission of liability. Rather, the trial court correctly characterized it as a settlement offer.

14.

**5.** *The trial court did not err in awarding attorney fees to respondents.*

The prevailing party in an ASFA action is entitled to reasonable attorney fees and costs. (§ 2983.4.) In a CLRA action, attorney fees and costs may be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith. (§ 1780, subd. (e).)

Respondents moved for attorney fees and costs under the ASFA and the CLRA. The trial court granted the motion and awarded $54,771.25 in statutory attorney fees to respondents.

Appellants acknowledge that respondents were the prevailing parties and, as such, were entitled to reasonable attorney fees under the ASFA. However, because the trial court did not make a specific finding that appellants brought their CLRA claim in bad faith, appellants contend that respondents are not entitled to attorney fees under the CLRA.

First, the absence of a finding that appellants prosecuted the CLRA claim in bad faith does not in itself preclude an award of attorney fees under that act. We presume the trial court followed the law and that its judgment is correct on matters as to which the record is silent. (*Wilson v. Sunshine Meat & Liquor Co., supra,* 34 Cal.3d at p. 563.) Moreover, the record supports such a bad faith finding. Appellants could not have been misled by Merced Honda's failure to list the downpayment as deferred when it was appellants who requested the deferment.

Nevertheless, even if attorney fees were not recoverable under the CLRA, respondents are entitled to the attorney fees award under the ASFA.

When a cause of action for which attorney fees are provided by statute is joined with other causes of action that do not so provide, the prevailing party may only recover on the statutory attorney fees cause of action. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 (*Akins*).) However, the joinder of causes of action should not dilute a party's right to attorney fees. (*Reynolds Metals Co. v. Alperson*

15.

(1979) 25 Cal.3d 124, 129.) Accordingly, when fees are incurred for representation on an issue common to both a cause of action in which fees are proper and one in which fees are not allowed, the fees need not be apportioned. (*Id*. at pp. 129-130.) Rather, where the issues are so interrelated that it is impossible to separate them into claims for which attorney fees are proper and claims for which they are not, all expenses incurred with respect to issues common to all causes of action qualify for award. (*Akins, supra,* 79 Cal.App.4th at p. 1133; *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 829.)

Here, both the ASFA claim and the CLRA claim arise from identical facts. Appellants' allegations of wrongdoing under both the ASFA and the CLRA are based on Merced Honda's failure to disclose the deferred downpayment and itemize the DMV fees. Appellants merely argued that these facts violated both acts. Thus, the liability issues were so interrelated that it would have been impossible to separate them into claims for which attorney fees can be awarded and claims for which they cannot. Therefore, allocation was not required and fees were properly awarded to respondents. (*Atkins, supra,* 79 Cal.App.4th at p. 1133.)

## DISPOSITION

The judgment and order are affirmed. Costs on appeal are awarded to respondents.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
DETJEN, J.

16.