[No. B235956. Second Dist., Div. Eight. Jan. 15, 2013.]

GONZALO ROJAS, Plaintiff and Appellant, v.
PLATINUM AUTO GROUP, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts B. and C. of the Discussion.

**COUNSEL**

Rosner, Barry & Babbitt and Hallen D. Rosner for Plaintiff and Appellant.

Law Office of Jonathan A. Goldstein and Jonathan A. Goldstein for Defendant and Respondent Topaz Financial, Inc.

No appearance for Defendants and Respondents Platinum Auto Group, Inc., and State Farm Fire and Casualty Company.

**OPINION**

**RUBIN, Acting P. J.**—Gonzalo Rojas appeals from the court's judgment sustaining without leave to amend the first demurrers filed by defendants. We reverse as to defendants Platinum Auto Group, Inc., and Topaz Financial, Inc., affirm as to defendant State Farm Fire and Casualty Company, and remand for further proceedings.

## FACTS AND PROCEEDINGS

On September 20, 2010, appellant Gonzalo Rojas bought a car from respondent Platinum Auto Group, Inc., doing business as Platinum Motors (Platinum), a car dealership in Marina Del Rey. Appellant put no cash down the day he bought the car. Instead, he made a deferred downpayment over the next three months consisting of four payments totaling $2,000: $1,000 on

October 11, 2010; $500 on October 27, 2010; $250 on November 20, 2010; and $250 on December 23, 2010.[1]

When appellant bought the car, Platinum filled out a retail installment sales contract, a form required by the Rees-Levering Motor Vehicle Sales and Finance Act (Rees-Levering) (Civ. Code, §§ 2981 et seq., 2981.9).[2] The sales contract contained a section for Platinum to enter information about the downpayment. Platinum should have entered appellant's $2,000 downpayment on line 6D of that section, labeled "Deferred Down Payment." Instead, Platinum deliberately entered "$2,000" on line 6G, labeled "Remaining Cash Down Payment," to indicate a $2,000 cash payment by appellant at the time of sale.

Six months later in April 2011, appellant filed his complaint at issue here. He alleged Platinum's mischaracterization of his downpayment violated Rees-Levering, which requires a detailed and truthful itemization of appellant's downpayment. (§ 2982, subd. (a)(6).) Appellant's complaint named as defendants respondents Platinum and Topaz Financial, Inc. (Topaz), the lender to whom Platinum had assigned the sales contract.[3] In addition to alleging a cause of action for violation of Rees-Levering, appellant alleged Platinum's deliberate mischaracterization of appellant's downpayment violated the Consumers Legal Remedies Act (§ 1750 et seq.), and constituted an unfair business practice in violation of Business and Professions Code section 17200.

---

[1] The receipt for the fourth payment is in the amount of $340. The parties on appeal state without comment that the fourth payment was $250. Because this appeal is from a demurrer before any evidence has been received, we accept what seems to be the parties' agreement that the fourth payment was $250, but, in the interest of faithfulness to the record, we note the discrepancy in the fourth payment's size.

[2] All undesignated statute references are to the Civil Code.

[3] Appellant also named as a defendant respondent State Farm Fire and Casualty Company (State Farm), which had issued a surety bond to Platinum, alleging a single cause of action against State Farm for violation of Vehicle Code section 11710. The trial court sustained State Farm's demurrer after the court found appellant stated no valid cause of action against Platinum. Appellant served his notice of appeal from the judgment on all three respondents, including State Farm, but appellant has not included State Farm's demurrer in the record on appeal, and State Farm has not filed a respondent's brief. Appellant's sole contention in support of reversing the court's judgment for State Farm is his conclusory statement that appellant "has properly demonstrated that there are valid causes of action against Platinum. Accordingly, State Farm's demurrer should be overruled."

We disagree. Appellant bears the obligation of demonstrating the trial court erred. To do so, appellant must provide a sufficient record and legal argument, supported by citation to legal authorities. Appellant's conclusory statement about State Farm's demurrer fails that obligation (*Walker v. Sonora Regional Medical Center* (2012) 202 Cal.App.4th 948, 952, fn. 2 [135 Cal.Rptr.3d 876]), and we affirm the trial court's ruling as to State Farm.

Platinum demurred to appellant's complaint. Platinum noted that appellant did not allege that Platinum had misstated essential terms of the sale, such as the car's purchase price or the terms of appellant's auto loan from Topaz. Platinum asserted that its entering the $2,000 figure on the wrong line of the sales contract was merely a technical violation which did not support a cause of action. Moreover, according to Platinum, appellant benefitted from drawing out his downpayment into four deferred payments because it eased any cashflow crunch he might have suffered if he had been forced to pay the entire $2,000 downpayment at the time of sale. Topaz joined Platinum's demurrer.

The trial court sustained the demurrers without leave to amend. The court concluded Platinum's mischaracterization of appellant's downpayment was not actionable. The court's order sustaining the demurrers stated the "Court finds that PLATINUM's sole fault was in failing to list [appellant's down] payment as 'deferred' three lines above in Item 6(d) instead of 6(g), a defect which, under these circumstances, may properly be characterized as 'trivial'." Additionally, the court concluded appellant suffered no actual loss from the mischaracterization. The court found, "There is no allegation that PLATINUM's alleged mischaracterization of the down payment . . . resulted in any damage or monetary loss to [appellant]." The court reasoned that "even if the parties' agreement had properly listed the $2,000 as a 'Deferred Down Payment,' [appellant] would be in the exact same position as he is now. There is nothing to show how listing the $2,000 as a 'Remaining Cash Down Payment' versus a 'Deferred Down Payment' altered the parties' deal to [appellant's] detriment." This appeal followed.[4]

## STANDARD OF REVIEW

"A demurrer must assume the truth of a complaint's properly pleaded allegations." (*Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 566, fn. 1 [120 Cal.Rptr.3d 541, 246 P.3d 621].) " 'We treat [a] demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable

---

[4] On appeal, Topaz requests attorney fees and costs. The record is not clear whether Topaz requested them below, as the court issued no ruling regarding fees and costs. Furthermore, assuming the court denied them, Topaz did not file a cross-appeal, thus waiving any error. And finally, because we reverse as to Topaz, it is not a prevailing party, making a cost and fee award, at best, premature.

possibility that the defect can be cured by amendment . . . ." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)[5]

## DISCUSSION

### A. *Complaint Stated a Cause of Action for Violation of Rees-Levering*

The Automobile Sales Finance Act, and its modern incarnation as Rees-Levering are codified at section 2981 et seq. Broadly speaking, Rees-Levering is a consumer protection law governing the sale of cars in which the buyer finances some, or all, of the car's purchase price. (See, e.g., *Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 91 [143 Cal.Rptr.3d 152]; *Salenga v. Mitsubishi Motors Credit of America, Inc.* (2010) 183 Cal.App.4th 986, 998 [107 Cal.Rptr.3d 836].) Rees-Levering requires a car dealer to disclose in a single document, which the parties here call a retail sales installment contract, all the terms and conditions of sale. (§ 2981.9.) In disclosing those terms, the sales contract must itemize the purchaser's downpayment. That itemization must state the following (the statutory analogues for the mislabeling by Platinum at issue in this appeal are italicized): "(A) The agreed value of the property being traded in. [¶] (B) The prior credit or lease balance, if any, owing on the property being traded in. [¶] (C) The net agreed value of the property being traded in . . . . [¶] (D) *The amount of any portion of the downpayment to be deferred* until not later than the due date of the second regularly scheduled installment under the contract . . . . [¶] (E) The amount of any manufacturer's rebate . . . . [¶] (F) *The remaining amount paid or to be paid by the buyer as a downpayment.* [¶] (G) The total downpayment. . . ." (§ 2982, subd. (a)(6), italics added.)

Platinum's violation of Rees-Levering involving appellant's downpayment was twofold. First, Platinum misstated the downpayment's nature by labeling it as a "Remaining Cash Down Payment" tendered at the time of sale (§ 2982, subd. (a)(6)(F)) instead of a "Deferred Down Payment" (*id.*, subd. (a)(6)(D)). As a consumer protection and disclosure statute, Rees-Levering provides that unless "dealers disclose correct information the disclosure itself is meaningless and the informational purpose of the [statute] is not served." (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1005 [112 Cal.Rptr.3d 607].) In enacting Rees-Levering, the Legislature created separate categories for cash put down at the time of sale and for a deferred

---

[5] Respondent Topaz asserts in its brief that equitable concepts barred any relief sought by appellant. Topaz cites no legal authority that its assertion (which relies on considerations outside the four corners of the complaint and matters of which we may not take judicial notice) is properly a subject of demurrer. We thus disregard the assertion as unsupported by citation to legal authority and cogent argument. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)

downpayment. Because the Legislature drew the distinction, we cannot conflate the two types of downpayments as if they were one and the same.

Second, in addition to misstating the downpayment's nature, Platinum misstated the downpayment's amount. Rees-Levering defines a downpayment as money paid before the buyer's second scheduled loan payment. Section 2981, subdivision (f) states a " '[d]ownpayment' means a payment that the buyer pays or agrees to pay to the seller . . . at or prior to delivery by the seller to the buyer of the motor vehicle . . . . The term shall also include the amount of any portion of the downpayment the payment of which is deferred until not later than the *due date of the second otherwise scheduled payment* [under the buyer's car loan] . . . ." (Italics added.) Appellant's second scheduled loan payment was December 4, 2010. Appellant made the first three of his four deferred payments before December 4: $1,000 on October 11, 2010; $500 on October 27, 2010; and $250 on November 20, 2010. Those three payments totaled $1,750. He made his final payment of $250 after December 4 on December 23, 2010. This last payment did not satisfy the statute's definition of a downpayment. (§ 2981, subd. (f), see § 2982, subd. (a)(6)(D) [not a downpayment if after second scheduled loan payment].) Thus, regardless of whether appellant's downpayment was cash up-front at the time of sale or deferred, his total downpayment under the statute's definition was $1,750, not $2,000 as Platinum stated in the sales contract.

█ If an auto dealer misstates or conceals terms of a car sale, the sales contract is unenforceable and the buyer may recover the total amount paid to the seller. (§ 2983.)[6] Nevertheless, the trial court sustained respondents' demurrers because it concluded Platinum's mischaracterization of appellant's downpayment did not injure appellant in that the sales contract accurately stated essential terms of the contract, such as the car's purchase price and the interest rate on appellant's car loan. In finding no injury, the trial court relied on the substantial compliance doctrine applied by our Supreme Court in *Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23 [22 Cal.Rptr. 657, 372 P.2d 649] (*Stasher*) to Rees-Levering's predecessor statute. The trial court's reliance on *Stasher* was misplaced because the Legislature has rejected its application to the type of nondisclosure at issue here.

*Stasher* involved an earlier statute less demanding of car dealers than Rees-Levering. The version of the Automobile Sales Financing Act in effect in the mid-1950's at the time of *Stasher*'s car sale required only the following

---

[6] "[I]f the seller, except as the result of an accidental or bona fide error in computation, violates [the disclosure requirements of] subdivision (a) . . . of [Civil Code] Section 2982, the conditional sale contract shall not be enforceable [and] the buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller . . . ." (§ 2983.)

minimal detail about the downpayment: " '1. The cash price of the personal property described in the conditional sale contract. [¶] 2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. . . . [¶] 3. The amount unpaid on the cash price, which is the difference between Items 1 and 2.' " (*Stasher, supra,* 58 Cal.2d at p. 26, fn. 1.) As one may discern from our quotation of the downpayment provisions of current section 2982, subdivision (a)(6), *ante,* Rees-Levering's disclosure requirements about the downpayment are much more exacting in their detail.[7]

*Stasher* explained that "[s]ubstantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute. . . . [W]hen there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of noncompliance . . . ." (*Stasher, supra,* 58 Cal.2d at p. 29, italics omitted.) Here, the trial court found no actionable violation of Rees-Levering because Platinum's mischaracterization of the downpayment was, in the court's view, a "trivial" technicality. In the trial court's view, Platinum had substantially complied with Rees-Levering's disclosure requirement regarding appellant's downpayment notwithstanding Platinum's mislabeling and misstating of the downpayment.

A recent amendment of Rees-Levering reveals the Legislature's rejection of *Stasher's* substantial compliance defense except for the narrowest circumstances. Rees-Levering requires an auto seller to disclose in the sales contract certain governmental fees, including licensing, transfer, registration, and new tire fees. (§ 2982, subd. (a)(2).) Before the recent amendment took effect in 2012, many car buyers had begun suing dealers who lumped those fees into one entry in the sales contract. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 238 (2011–2012 Reg. Sess.) as amended Sept. 2, 2011, pp. 1–2.) To prevent such lawsuits, the Legislature narrowed Rees-Levering's remedial statute, which ordinarily made sales contracts that do not comply with Rees-Levering's disclosure requirements unenforceable. The Legislature added subdivision (b) to section 2983 to carve out an exception for improper disclosure of the foregoing governmental fees. The amendment stated: "A conditional sale contract executed or entered into on or after January 1, 2012, shall not be made unenforceable solely because of a violation by the seller of paragraph (2) or (5) [(amounts paid to public entities for licensing, registration, and other fees)] of subdivision (a) of [Civil Code] Section 2982. . . ." (§ 2983, subd. (b).)

---

[7] "The legislative purpose in enacting the Rees-Levering Act was to provide more comprehensive protection for the unsophisticated motor vehicle consumer." (*Cerra v. Blackstone* (1985) 172 Cal.App.3d 604, 608 [218 Cal.Rptr. 15].)

A bill analysis by the Assembly explained the amendment's purpose. "The requirement that government fees be shown on the contract has been a feature of [Automobile Sales Financing Act/Rees-Levering] since its enactment 50 years ago. Initially the Act provided no right of rescission if these fees were lumped together on the contract because dealers could defend on the ground of substantial compliance. (Stasher v. Harger-Haldeman, 58 Cal.2d 23 [22 Cal.Rptr. 657, 372 P.2d 649] (1962).) However, the Act was subsequently revised to require the current specific itemization. [Without the proposed amendment, the] remedy of rescission therefore appears to be available as a remedy—and apparently the only remedy—specified in the statute for unlawfully aggregating these fees." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 238 (2011–2012 Reg. Sess.) as amended Sept. 2, 2011, p. 4.)

The 2012 amendment thus eliminated the right of rescission for mislabeling government fees. Under the long-standing statutory interpretation principle *"expressio unius exclusius alterius est"* (to express one thing is to exclude others), the Legislature's declaration that a sales contract remains enforceable if its only erroneous nondisclosure involves certain governmental fees (§ 2983, subd. (b)), means that rescission remains available for the contract's noncompliance with other disclosure requirements—for example, truthful and accurate disclosure of the downpayment.

The Legislature's statement of intent in enacting the amendment underscores that a car buyer need not suffer economic damage to rescind a sales contract that does not comply with Rees-Levering. "The Legislature finds and declares as follows: [¶] (a) The Rees-Levering . . . Act . . . sets forth a statutory scheme to regulate the retail sale and financing of motor vehicles. The act contains detailed disclosure requirements intended to protect the consuming public and includes provisions that render a conditional sale contract unenforceable if any of those disclosure requirements are violated, regardless of the nature of the disclosure violation *or any consumer harm.*" (Assem. Bill No. 238 (2011–2012 Reg. Sess.) § 1, italics added.)

In short, the purpose and history of Rees-Levering establish that appellant need not have suffered actual damage from Platinum's violation of the statute's disclosure requirements, and that *Stasher's* substantial compliance rule has been statutorily removed. Appellant could state a claim for relief under the act based on Platinum's misstatements about appellant's downpayment even if the trial court deemed the misstatements "trivial." The trial court therefore erred in sustaining respondents' demurrers to appellant's cause of action for violation of Rees-Levering.

B., C.\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

\*See footnote, *ante*, page 997.

## DISPOSITION

The judgments following the orders and sustaining the demurrers of respondents Topaz Financial, Inc., and Platinum Auto Group, Inc., doing business as Platinum Motors are reversed, and the court is directed to enter a new and different order overruling their demurrers to appellant's cause of action for violation of Rees-Levering, and sustaining with leave to amend the demurrers to appellant's causes of action for violation of the Consumers Legal Remedies Act and unfair business practices. The judgment following the order and sustaining the demurrer of State Farm Fire and Casualty Company is affirmed. Appellant to recover his costs on appeal against Topaz and Platinum, only.

Grimes, J., and Sortino, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.