Filed 10/21/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANDRE P. POMPEY,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>BANK OF STOCKTON,<br><br>    Defendant and Appellant. | F085652<br><br>(Super. Ct. No. 17CECG00651)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Jeffrey Y. Hamilton, Jr., Judge.

Downey Brand, Matthew J. Weber, Christopher M. Kolkey and Jennifer L. Williams for Defendant and Appellant.

Law Office of A.L. Hinton and Alicia L. Hinton for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In November 2014, plaintiff and appellant Andre Pompey purchased a recreational vehicle (RV) from a dealership that is not a party to this appeal. Defendant and appellant Bank of Stockton (the Bank) assisted Pompey by financing the purchase of his vehicle. A little over two years later, Pompey sued, among others, the dealership and the Bank, claiming his retail installment sales contract failed to contain several statutorily required disclosures. Pompey ultimately proceeded on the allegation that the dealership violated the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.; hereafter, ASFA)[1] by failing to appropriately disclose in the written contract the portion of his downpayment made in cash, and the portion made in trade-in value of another vehicle. Failure to make these written disclosures as required by law allows the plaintiff a choice of remedies: either continuing the contract in force, or recovering the full amount paid to the dealership and/or its assignee (in this case, the Bank) and returning the vehicle. (§§ 2983, 2983.1.) Pompey chose the latter. The question posed by this appeal is whether this cause of action falls within the one-year statute of limitations imposed on actions for statutory penalties and forfeitures by Code of Civil Procedure section 340, or the four-year statute of limitations for written contracts found in Code of Civil Procedure section 337. The trial court concluded the four-year statute applied.

We conclude the rescission/restitution remedy imposed by the ASFA is a penalty, and, thus, Code of Civil Procedure section 340 provides the appropriate limitations period here. This remedy is imposed without regard for fault or assignment of blame, is not based on actual damages, and significantly limits the ability of the court to exercise discretion to achieve the ends of justice. This distinguishes this statutory penalty from equitable remedies, pursuant to which courts have wide discretion to consider a plethora of factors—including both fault and the extent of injuries on all sides—and fashion the

---

[1]    Further undesignated statutory references are to the Civil Code.

most equitable and just result. Further, the legislative history of the statute indicates it was intended to be a penalty. Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

The relevant factual background of this case is not contested by the parties. Pompey inquired about purchasing a new recreational vehicle (RV) on November 3, 2014 from JD's RV. The parties agreed the downpayment for the new RV would be $1,000 in cash, and $18,100 in trade-in value from Pompey's old RV. However, the ultimate written contract reflected a downpayment of $19,100 cash, rather than the actual itemized breakdown. Pompey brought in his old RV to trade in, and picked up his new RV, on November 15, 2014. The total price for the RV was $42,878.40. After the reduction of $19,100 for the trade-in and cash downpayment, the balance left was $23,778.40, which Pompey financed through the Bank. Pompey ultimately made at least $22,031.56[2] in payments on the RV. Ultimately, the purchase contract for the new RV was assigned to the Bank.

Pompey claims that, about two weeks after picking up his RV, he took it on a trip with his family, wherein they discovered it leaked.[3] Two days later, on November 24, 2014, Pompey alleges he contacted the dealership to complain about the problems with the RV, but the first amended complaint (FAC) contains no information about any subsequent attempts to remedy the issues Pompey identified. Pompey filed suit on February 27, 2017, and filed the FAC, which is the operative complaint, on August 15, 2018.

---

[2]     Pompey claims he made $23,163.64 in payments. Given our conclusion here, this dispute need not be resolved.

[3]     The Bank disputes facts related to the condition of the RV as irrelevant to the cause of action upon which judgment was rendered and therefore not established in the record below. We agree these facts are not relevant to resolve the question on appeal, since the ASFA is a strict liability statute. We include Pompey's allegations merely for background.

The FAC alleged six different causes of action against the dealership, including, as relevant here, the sixth cause of action for violation of the ASFA.  The ASFA cause of action alleged:  (1) the dealership improperly backdated the sales contract to November 3, 2014 (instead of November 15, 2014, the date the contract was signed); and (2) the sales contract reflected a cash downpayment of $19,100, rather than $1,000 in cash and $18,100 in a trade-in.  The FAC also alleged the Bank, as assignee of the contract from the dealership, was liable for any claims against the dealership under the Federal Trade Commission's "holder rule."  (16 C.F.R. § 433.2 (holder rule).)[4]

Pompey moved for summary adjudication on the sixth cause of action in June 2020 on only one theory, namely, that the sales contract reflected a cash downpayment of $19,100, rather than $1,000 in cash and an $18,100 trade-in, which is not permitted by the ASFA.  On appeal here, the Bank does not dispute this is unlawful and the contract did not accurately itemize the downpayment.

The trial court issued a tentative ruling on the summary adjudication motion on March 9, 2021, seeking further briefing on nine separate issues.  The parties submitted supplemental briefing on April 7, 2021, the court issued a tentative ruling on April 30, 2021, the matter was argued on June 22, 2021, and the court adopted its tentative ruling as its final ruling on June 24, 2021.  The trial court denied summary adjudication as to the Bank and another defendant—a bond company—on the sixth cause of action, but granted summary adjudication for Pompey and against the dealership, which was then still a party to the case, on the sixth cause of action for violation of the ASFA.  In doing so, it noted the dealership had raised the issue of the one-year statute of limitations, but found Code of Civil Procedure section 340 did not apply, because the remedy sought—rescission of

---

[4]    "The Federal Trade Commission's 'holder rule' makes the holder of a consumer credit contract subject to all claims the debtor could assert against the seller of the goods or services obtained under the contract (or its proceeds)."  (*Melendez v. Westlake Services, LLC* (2022) 74 Cal.App.5th 586, 588–589.)  The Bank concedes the holder rule applies in this case.

4.

the contract and restitution of the amounts paid thereunder to Pompey—was equitable in nature. The court rejected the argument that this statutory remedy was a penalty.

Pompey and the Bank stipulated to judgment on December 2, 2021. The stipulation noted the judgment against the dealership would apply to the Bank pursuant to the holder rule. The judgment agreed the Bank would accept return of the vehicle and would pay a judgment of $42,263.64 to Pompey. It also noted Pompey had previously entered a settlement with a third party—the bond company—for $47,000, and the Bank would be entitled to file a motion with the trial court seeking a credit of that settlement amount against the judgment, which Pompey was permitted to oppose.[5] The stipulation specifically noted the parties did not waive their right to appeal any of the trial court's rulings. Following motion practice, the court entered judgment on January 24, 2023. The Bank timely filed notice of appeal on January 25, 2023.

## DISCUSSION

At the heart of this case is a relatively straightforward dispute about whether the rescission and restitution remedy provided by the ASFA is a penalty. This is a legal question of statutory interpretation and thus is reviewed de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860–861; *Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606, 624.)

Our aim when interpreting a statute is to effectuate the intention of the Legislature expressed by the statute in question. (Code Civ. Proc, § 1859 ["In the construction of a statute the intention of the Legislature … is to be pursued"]; *People v. Cruz* (1996) 13 Cal.4th 764, 782 ["[T]he fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature."]; *City of Chula Vista v. Drager* (2020) 49

---

[5]    In a cross-appeal, Pompey contests the trial court erred in applying some offset to the interest on the judgment, not merely the principal judgment amount. Because we conclude the remedy sought is a penalty to which the one-year statute of limitations applies, we need not reach this issue.

Cal.App.5th 539, 560 ["'"""When we interpret the meaning of statutes, our fundamental task is to ascertain the aim and goal of the lawmakers so as to effectuate the purpose of the statute'"""'"].)  We look to the language of the statute as the primary indicator of intent, giving the words their usual and ordinary meanings.  (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 239.)  If those words are ambiguous—i.e., they are susceptible of more than one reasonable construction—we "may look to such aids as legislative history, the maxims of statutory construction, and the consequences of a particular interpretation, including its impact on public policy."  (*Ibid*.)  If the statute is unambiguous, we typically adopt its plain meaning, unless it would produce absurd consequences or frustrate the purposes of the statute.  (*Ibid.*)

The ASFA "is a consumer protection statute that governs the sale of vehicles where the buyer finances all or part of the car's purchase price."  (*Raceway Ford Cases* (2016) 2 Cal.5th 161, 164.)  The statute, enacted in 1961, replaced the 1945 Automobile Sales Act (ASA) "and was designed to provide a more comprehensive protection for the unsophisticated motor vehicle consumer."  (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69, fn. omitted; see § 2981 et seq.)[6]  ASFA states a conditional sale contract "shall contain" certain disclosures.  (§ 2982.)  As relevant here, these mandatory disclosures include "[t]he amount of the buyer's downpayment itemized to show … [¶] … [¶] [t]he agreed value of the property being traded in" and "[t]he remaining amount paid or to be paid by the buyer as a downpayment."  (*Id.*, subd. (a)(6)(A), (F).)  It is undisputed the conditional sales contract in this case did not contain an accurate itemization of Pompey's downpayment.

The statute provides for strict liability in the event a seller fails to make the required written disclosures.  Barring certain statutory exceptions not applicable here, "if

---

[6]  The Bank requests we take judicial notice of certain portions of the previous statute, which we grant.  (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 176, fn. 12.)

the seller … violates any provision … of subdivision (a) … of Section 2982, the conditional sale contract shall not be enforceable … and … the buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller or his or her assignee." (§ 2983, subd. (a).) As the Supreme Court noted of the predecessor ASA statute, "'the form and requisites prescribed by the statute are mandatory; a contract which does not *substantially* conform thereto is unenforceable; and a buyer who has made payments to the seller under such a contract may recover them .…'" (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 (*Stasher*).) No actual damages need be shown for recovery under the ASFA, and the ASFA has since been legislatively amended to remove the "substantial compliance" rule previously adopted by our Supreme Court. (See *Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1005 (*Rojas*).) A buyer is now entitled to relief under the statute even if the misstatement in the disclosure is deemed "'trivial'" and causes no harm. (*Ibid.*) Any contract covered by the statute that fails to comply with the disclosure terms is strictly unenforceable.

The statute permits the buyer a choice of remedies, once it has been determined a conditional sales contract is unenforceable. "When a conditional sale contract is not enforceable under Section 2983 or this section, the buyer may elect to retain the motor vehicle and continue the contract in force, or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle." (§ 2983.1, subd. (e).) The seller may not receive an offset for the decreased value of the vehicle, as the statute says "The value of the motor vehicle returned shall be credited as restitution by the buyer without any decrease that results from the passage of time in the cash price of the motor vehicle .…" (*Ibid.*) This remedy is referred to as rescission and restitution. (See *Raceway Ford Cases, supra*, 2 Cal.5th at p. 166.)

The ASFA does not contain a statute of limitations, and therefore we must look to the general statute of limitations that might apply. Pompey suggests the four-year statute

7.

of limitations for an "action upon any contract, obligation or liability founded upon an instrument in writing" should apply. (Code Civ. Proc., § 337, subd. (a).) The Bank asserts the one-year statute of limitations for "An action upon a statute for a penalty or forfeiture" applies. (*Id.*, § 340, subd. (a).) Thus, the question posed here is whether an action under Civil Code section 2983 for the remedy described in Civil Code section 2983.1, subdivision (e), is a penalty. We conclude it is.

There is significant authority, some of it controlling authority we are bound to follow, for the proposition that what defines a "penalty" is a statutory entitlement to the payment of money without regard to actual injury. "Under well-established California law, statutes that provide for mandatory damages either *in addition to* actual injury or *regardless* of actual injury or fault are considered to be in the nature of a penalty or forfeiture subject to the one-year limitations period." (*County of El Dorado v. Superior Court* (2019) 42 Cal.App.5th 620, 625.) Indeed, *County of San Diego v. Milotz* (1956) 46 Cal.2d 761 would seem to be controlling on this point. That case involved a statute, which required court reporters to file transcripts within 10 days of the close of the preliminary examination in a criminal case. (*Id.* at p. 765.) If the reporter failed to file the transcripts within the time allotted, he or she was entitled to only half of the normal rate for the reporting. (*Ibid.*) A county sued a court reporter, claiming he was over-compensated by being paid in full for late transcripts, and the reporter argued Code of Civil Procedure section 340 applied because it was an action "'upon a statute for a penalty or forfeiture.'" (*Milotz, supra*, at pp. 765–766.) In concluding the statute in question was a penalty, our Supreme Court noted that, because the act provided for "a stated monetary punishment of the reporter by reason of his noncompliance with the filing time requirements and *without any reference whatever to the question of damages*," it was a penalty. (*Id.* at p. 766, italics added.) The court noted the statute imposed an "arbitrary pecuniary punishment" "without regard for any excuse for his delay in

performance," and in such circumstances, "the statute must be held to provide a penalty or forfeiture for noncompliance .…" (*Id.* at p. 767.)

Here, there is no dispute sections 2983 and 2983.1 require neither actual damages on the part of plaintiff nor any level of fault on the part of defendant. Section 2983 is a strict liability statute. (*Rojas, supra*, 212 Cal.App.4th at p. 1005.) It applies even when the misstatements are arguably intended to and potentially do benefit the plaintiff. (See *Thompson v. 10,000 RV Sales, Inc.* (2005) 130 Cal.App.4th 950, 958–960, 971–972 [dealership's over-valuation of trade-in to permit consumer to obtain financing she would not otherwise be able to obtain violated ASFA].) As a remedy for these errors—even those that arguably benefited the plaintiff, or at least cannot be shown to have caused actual harm—the plaintiff is entitled to rescission of the contract and restitution of all payments made, regardless of whether they suffered any damages. (*Rojas, supra*, at p. 1005.) This fits the classic definition of a penalty.[7]

This is also in accordance with the sole prior published case directly touching on this topic. In *Stone v. James* (1956) 142 Cal.App.2d 738 (*Stone*), the court determined a one-year statute of limitations applied to a similar remedy provision under the predecessor statute of the ASFA, the ASA. The ASA's remedy provision stated, in pertinent part: "'If the seller … shall violate any provision of [the substantive provisions of the ASA,] the conditional sale contract shall not be enforceable … and the buyer may

---

[7]     Pompey's repeated assertions at oral argument that the statute provides a choice of remedies, and therefore does not impose a mandatory punishment, are not well taken. Section 2983.1 says, when a covered contract is unenforceable, "the buyer may elect to retain the motor vehicle and continue the contract in force, or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle." (§ 2983.1, subd. (e).) This is not truly an election of remedies. In the vast majority of situations, continuing the contract in force is what would occur absent the consumer filing suit. This language simply makes clear a violative contract is not void, but rather voidable at the option of the consumer (and *only* the consumer). Further, Pompey conceded at oral argument that, once the consumer elects rescission, the statute is mandatory and the court may not prevent the consumer from obtaining the remedy sought, even if the consumer suffered little or no damages.

recover from the seller in a civil action the total amount paid on the contract balance by the buyer to the seller or his assignee .…'" (*Stone, supra*, at p. 739, quoting former § 2982, subd. (e).) The current language of the ASFA states: "if the seller … violates any provision of [the substantive provisions of the ASFA], the conditional sale contract shall not be enforceable, … and … the buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller or his or her assignee." (§ 2983, subd. (a).) While the language has some minor differences, we see no substantive changes between these two remedy provisions, nor has Pompey identified any substantive differences for us. While *Stone* is not binding, absent a sufficient explanation distinguishing it, it is persuasive.[8] In *Stone*, the court noted this remedy provision was "clearly" a penalty (*Stone, supra*, at p. 740), and it seems no less obvious to us that current section 2983 is a penalty as well.

Pompey seeks to differentiate *Stone* and maintains that current section 2983 imposes an equitable remedy by noting there was no evidence in *Stone* that the vehicle was tendered, or offered to be tendered, to the dealer or its assignee, as required under current law and as occurred in this case. Setting aside the fact *Stone* simply says nothing about the fate of the vehicle—it does not say the vehicle was *not* tendered, but rather simply omits any reference to its fate—we note this is not an equitable directive, but rather a *statutory requirement* under section 2983.1. In order to avail oneself of the remedy set by section 2983.1, one must "elect to rescind the contract and return the motor vehicle." (*Id.*, subd. (e).) The trial court does not exercise equitable discretion to require the return of the vehicle. It is, instead, part and parcel of the statutory remedy.

---

[8]     One Court of Appeal's decisions do not control decisions from other districts. (*Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 677, disapproved on other grounds by *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1239; *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1456, fn. 7; *McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315–316, fn. 4.)

Further, the legislative history of the statute suggests our Legislature, in enacting the current ASFA, viewed rescission-and-restitution as a penalty, not as permission for the court to award an equitable remedy. Prior to the 1961 enactment of the ASFA, the ASA provided similar, albeit lesser, protections. Section 2982, former subdivision (a) required the contract be in writing and include specified items, namely: (1) cash price; (2) downpayment; (3) cost of any insurance premium included in the contract balance; (4) itemized government fees included in the contract balance; (5) the time price differential or finance charge; and (6) the number of installments. (See *General Motors Acceptance Corp. v. Kyle* (1960) 54 Cal.2d 101, 105, fn.1 (*General Motors Acceptance Corp.*).) Former subdivision (b) of section 2982 required the seller to provide an exact copy of any insurance policy included in the contract. (*General Motors Acceptance Corp., supra*, at p. 108.) Former subdivision (c) of section 2982 set the maximum finance and interest charges, and former subdivision (d) provided for a refund credit for one who paid off the debt early. (*General Motors Acceptance Corp., supra*, at p. 108.) Subdivisions (a) and (b) of the ASA were referred to as "'formal'" requirements of the former statute, and subdivisions (c) and (d) were referred to as "'substantive.'" (*General Motors Acceptance Corp., supra*, at p. 109.) At the time, the California Supreme Court interpreted section 2982's remedies for "formal" violations as "in the nature of traditional rescission and restitution," but section 2982's remedies for "substantive" violations as "not limited to restitution because the Legislature has expressed the intention that the seller should be penalized for such violations." (*General Motors Acceptance Corp., supra*, at p. 110.) The court noted that sellers "whose violations are formal only can have an offset 'in an amount representing the depreciation in value of the car occasioned by the use made of it by the buyer while in his possession, which necessarily excludes any allowance for depreciation resulting from a general decline in the market value of such automobile during the period in question [citation] .…'" (*Id.* at p. 111, fn. omitted.) The

11.

Supreme Court clearly believed at least a portion of the prior statute imposed remedies equitable in nature.

Shortly after the Supreme Court's opinion in *General Motors Acceptance Corp.* was issued in May 1960, the Legislature sought to replace the ASA with a statute containing stronger protections for consumers. In doing so, it made clear it saw the statutory remedies as penalties, not an invocation of the equity powers of a court. A December 1960 committee report from the Assembly's Finance and Insurance Committee concerning the shortcomings of the ASA consistently refers to section 2982, former subdivision (e) of the ASA—on which current sections 2983 and 2983.1 are based—as a penalty. (Assem. Interim Com. on Finance and Insurance, Rep. on Automobile Financing (Dec. 1960) 1 Appen. to Assem. J. (1961 Reg. Sess.) pp. 32, 36, 39 (Interim Committee Report).) The report concluded the ASA's provisions "are ineffectual in general in that they do not provide a great enough incentive for parties to such sales to comply with the provisions of the code because *the penalties* provided are insufficient to deter noncompliance by dealers .…" (Interim Committee Report, *supra*, at pp. 38–39, italics added.) This indicates the Legislature did not agree with the Supreme Court's assessment, and instead conceived of the prior statute's remedy provisions as containing penalties.

The ASFA was then enacted shortly thereafter, in 1961. (Assem. Bill No. 2252 (1961–1962 Reg. Sess.).) It contained an increased number of disclosure requirements, including that the amount of the downpayment be itemized to reflect how much was provided by cash payment and the amount provided by a trade-in value. (Stats. 1961, ch. 1626, pp. 3536–3537.) It also strengthened the enforcement provisions of the prior act. The Bar Journal, in describing the newly enacted ASFA, noted that "Section 2983 and 2983.1 replace and substantially expand upon the [ASA]'s old penalty sections (§§ 2982[, subds. ](e) and (f))." (Selected 1960–1961 California Legislation (1961) 36

12.

State Bar J. 693.)  The current version of the statute contains a far more exhaustive list of disclosure requirements than did the ASA.  (§ 2982, subd. (a).)

In 2011, the ASFA was amended yet again, in response to lawsuits filed against car dealerships alleging the dealerships had failed to appropriately itemize and disclose the government fees collected as part of the transaction.  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 238 (2011–2012 Reg. Sess.) as amended Sept. 2, 2011.)  The lawsuits sought to rescind contracts on that basis and restore the amount paid to the consumers.  (*Ibid.*)  A lobbying group for automobile dealerships sponsored the amendment, and sought certain limited exceptions to the rescission-and-restitution remedy, arguing that remedy was "unnecessary and excessive for technical and minor violations that cause no harm to a buyer."  (*Ibid.*)  As a result, the Legislature permitted a narrow exception from the rescission-and-restitution remedy for violations related *only* to the failure to appropriately itemize required government fees.  (§ 2983, subd. (b).)

As the Second District Court of Appeal, Division Eight, noted shortly after this 2011 amendment, the amendment's allowance of a narrow exception for a very few, specific violations made clear the Legislature's intent in enacting the ASFA was to provide stronger protections than the ASA and remove certain judicially created equitable exemptions designed to ameliorate the statute's harshness towards offending dealerships.  (*Rojas, supra*, 212 Cal.App.4th at pp. 1003–1005.)  For instance, the California Supreme Court had previously held the ASA required only "[s]ubstantial compliance," and "mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of noncompliance and thereby transformed into a windfall for an unscrupulous and designing buyer."  (*Stasher, supra*, 58 Cal.2d at p. 29 (*Stasher*).)  The *Rojas* court noted the Assembly's reports, in enacting the 2011 amendment, observed:  "'The requirement that government fees be shown on the contract has been a feature of [ASFA] since its enactment 50 years ago.  Initially the [ASA] provided no right of rescission if these fees

13.

were lumped together on the contract because dealers could defend on the ground of substantial compliance. (*Stasher v. Harger–Haldeman*, 58 Cal.2d 23 (1962).) However, the [ASA] was subsequently revised to require the current specific itemization. [Without the proposed amendment, the] remedy of rescission therefore appears to be available as a remedy—and apparently the only remedy—specified in the statute for unlawfully aggregating these fees.'" (*Rojas, supra*, at p. 1005, italics added, quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 238 (2011–2012 Reg. Sess.) as amended Sept. 2, 2011, p. 3.) This indicates the substantial compliance rule of *Stasher* was legislatively overridden by the 2011 amendments to the ASFA, such that a violation is now actionable even if it is "'trivial.'" (*Rojas, supra*, at p. 1005.)

Taken together, this statutory history and the subsequent amendments to the ASFA show the Legislature believed the Supreme Court's interpretation of the ASA's remedy provisions as nonpunitive was in error, and in enacting the ASFA, intended to promulgate a law even more protective of consumers than the ASA. In doing so, it overrode the substantial compliance doctrine, which was an equitably based exception allowed by the Supreme Court to lessen the harsh effect of the law as written. It also repeatedly enunciated that the rescission-and-restitution remedy—in both the ASA and the ASFA—was a penalty. It is clear from this history the Legislature did not believe it was enacting a provision that allowed for an exercise of the court's equitable powers in granting the statutory relief.

*Rojas* resolves Pompey's main argument that the rescission-and-restitution remedy under sections 2983 and 2983.1 is equitable in nature, and therefore cannot be a penalty. While we understand the facial plausibility of this argument, a critical hallmark of a court acting in equity is significant discretion to fashion a remedy that is just and equitable under the circumstances. (See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 ["[D]etermination of the appropriate remedy is left to the sound discretion of the trial court in the exercise of that court's power to grant equitable

relief."]; *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446 ["[A] court can compel a plaintiff seeking equitable relief to accommodate the equities favoring the defendant by conditioning the plaintiff's relief upon the enforcement of those equities."]; 13 Witkin, Summary of Cal. Law (11th ed. 2024) Equity, § 3 ["[E]quitable relief is flexible and expanding, and the theory that 'for every wrong there is a remedy' [citations] may be invoked by equity courts to justify the invention of new methods of relief for new types of wrongs."].)

Indeed, these types of equitable considerations were presumably what led courts interpreting the ASA prior to the enactment of the ASFA to ameliorate the harshness of its penalties through such considerations as the "[s]ubstantial compliance" rule or the allowance of certain offsets. (See *Stasher, supra*, 58 Cal.2d at p. 29; *General Motors Acceptance Corp., supra*, 54 Cal.2d at pp. 104–106 [stating § 2982 was "not intended to penalize the seller who violates it," and directing a remand to allow the consumer "to amend his counterclaim and seek recovery upon a restitutive rather than a punitive theory"]; *General Motors Acceptance Corp., supra*, at pp. 110–112 [approving of various court-created offsets under the ASA, depending on circumstances]; *United States Credit Bureau v. Sanders* (1951) 103 Cal.App.2d 806, 816–817 [allowing offset for "reasonable value of the use of the equipment while it was in [the plaintiffs'] possession"].) However, the ASFA largely removed these judicially created allowances. Courts specifically may no longer permit offsets under the ASFA for "any decrease that results from the passage of time in the cash price of the motor vehicle as the price appears on the conditional sale contract."[9] (§ 2983.1, subd. (e).) Nor is the "substantial compliance"

---

[9] The Fourth District Court of Appeal, Division One, has interpreted this offset limitation fairly narrowly. (See *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, disapproved on other grounds by *Raceway Ford Cases, supra*, 2 Cal.5th at pp. 176, 180.) In that case, the Court of Appeal found the only offset the Legislature intended to prohibit with this language was """depreciation resulting from a general decline in the market value of such automobile …," [citation].'" (*Nelson, supra*, at p. 1012.) It is unclear whether we would agree with that interpretation, as the language "*any* decrease that results from the passage of time" (§ 2983.1,

15.

rule of the ASA articulated in *Stasher* still good law, as no consideration is given under the ASFA to the reasons the seller violated the statute, how substantive the violation is, or the detrimental impact (or lack thereof) it had on the buyer. (*Rojas, supra*, 212 Cal.App.4th at p. 1005.) In other words, a court's ability to engage in equitable balancing in relation to the remedies prescribed by the ASFA is significantly limited, if it exists at all. A consumer who failed to receive the required disclosures may elect to rescind the contract, return the vehicle, and receive all payments made back. (§ 2983.1, subd. (e).) This allows for no individual tailoring of the remedy to fit the circumstances of the case, and again suggests the remedy offered by sections 2983 and 2983.1 is more in the nature of a penalty than in equity, since its application is far stricter than a court acting in equity would usually permit.

Nor is the fact that rescission and restitution are traditionally "equitable" remedies determinative of the outcome, as there is authority that a traditionally "equitable" remedy may still be a "penalty or forfeiture" within the meaning of Code of Civil Procedure section 340, when set by statute. In *Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, the plaintiff sought injunctive relief for alleged violations of Government Code sections 1090 and 1092, which prohibit public officials from having a financial interest in contracts made by them in their official capacities. (*Brandenburg, supra*, at p. 1355.) While the court noted these sections did not apply a "penalty," as the term had been defined in prior cases, they did impose a "forfeiture." (*Id.* at p. 1364.) "'A forfeiture is "[t]he divestiture of property without compensation" or "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty."'" (*Ibid.*) Because Government Code sections 1090 and 1092 require the voiding of the

---

subd. (e), italics added) would seem at first blush to be more expansive. However, since this is not a question that must be resolved in this appeal, we do not reach it. We note only the Legislature has statutorily limited the eligible offsets, restricting any ability the courts might have to do equity under the circumstances of a particular case.

contract in question without the public entity being required to restore any benefits it has received to the contracting party, these statutes impose a "'substantial forfeiture'" and, thus, Code of Civil Procedure section 340 applies, even though only injunctive relief was sought. (*Brandenburg, supra*, at p. 1364.) This is because Code of Civil Procedure section 340 applies to all situations where the plaintiff is able to recover relief ""without reference to the actual damage sustained,"" or where the remedy is in the nature of punishment. (*Brandenburg, supra*, at p. 1365.) Because even the *injunctive* relief sought in *Brandenburg* was subject to the one-year statute of limitations contained in Code of Civil Procedure section 340, it is clear statutory remedies typically thought of as equitable may, in certain circumstances, be penalties or forfeitures.

*Eisenberg Village etc. v. Suffolk Construction Co., Inc.* (2020) 53 Cal.App.5th 1201, is also instructive on this point. In that case, Eisenberg had entered into a contract with Suffolk for construction of a large project, which was to be completed by state licensed contractors, as required under the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.). (*Eisenberg, supra*, at pp. 1204–1206.) Following revelations that Suffolk was unlicensed at the time of construction, Eisenberg sought disgorgement[10] under Business and Professions Code section 7031, subdivision (b) (*Eisenberg, supra*, at p. 1203), which allows for an action against an unlicensed contractor to recover "all compensation paid to the unlicensed contractor for performance of any act or contract." (Bus. & Prof. Code, § 7031, subd. (b); accord, *Eisenberg, supra*, at p. 1207.) Suffolk contended this fell within the one-year statute of limitations imposed by Code of Civil Procedure section 340 (*Eisenberg, supra*, at p. 1208); Eisenberg claimed it did not,

---

**10** Disgorgement of profits is typically an equitable remedy. (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 123, superseded by statute on other grounds as stated in *Arias v. Superior Court (*2009) 46 Cal.4th 969, 982–983; *State of Cal. ex rel. Rapier v. Encino Hospital Medical Center* (2022) 87 Cal.App.5th 811, 836 ["'an order requiring a defendant to provide specific performance or disgorge ill-gotten gains' is equitable in nature"]; *Center for Healthcare Education & Research, Inc. v. International Congress for Joint Reconstruction, Inc.* (2020) 57 Cal.App.5th 1108, 1125.)

because he sought restitution, which was "'not a punitive remedy .…'" (*Eisenberg, supra*, at p. 1211.) However, the court in *Eisenberg* noted the remedy imposed by Business and Professions Code section 7031, subdivision (b), even if similar to restitution, was not actually the same, because it required the unlicensed contractor to return all compensation, regardless of damage, and without any equitable balancing of the hardship on the contractor or the value actually received by the consumer. (*Eisenberg, supra*, at p. 1211.) "Instead, for reasons of policy (to deter contractors from operating without a valid license), it provides a windfall to the plaintiff, at the expense of the unlicensed contractor, since the plaintiff also retains the work completed by the contractor." (*Ibid.*; accord, *San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 278.)[11] This is similar to the ASFA, in which a consumer is entitled to rescission of a contract and restoration of all payments made under that contract, without regard to actual damages or harm, and without the benefit of ameliorative equitable rules such as substantial compliance or full offsets to protect the seller.

Lastly, Pompey argues it would be improper and absurd to have different limitation periods for those plaintiffs who sue under the same statute, but whose claims are founded on actual damages. However, we see no absurdity. The same statute may provide for different remedies, and those remedies may be subject to different limitations periods. For instance, in *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, at issue was Business and Professions Code section 17529.5, which prohibited

---

[11]     Our Supreme Court also recently confirmed that simply because a statute uses the language of equity—for instance, by labeling a remedy as restitution—does not mean that it intends to invoke the common law equitable remedy. (See *Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 809, fn. omitted ["The plain language of section 1793.2, subdivision (d)(2), by contrast, indicates that the Legislature intended 'restitution' to be 'a term of art separate from the evolving common law concept that shares the name.'"].) Thus, a court awarding a prescribed statutory remedy termed "restitution" may well not be exercising its equitable powers in doing so. Pompey's motion requesting judicial notice of this opinion is granted.

certain deceptive e-mail advertising practices.[12]  (*Hypertouch, supra*, at p. 819.)

Business and Professions Code section 17529.5, subdivision (b), allowed those with

standing under the act to seek "'either or both'" of actual damages or liquidated damages

of $1,000 per unsolicited e-mail, up to a maximum of $1,000,000.  (*Hypertouch, supra*, at

p. 819.)  The court applied a three-year statute of limitations for actual damages, and a

one-year statute of limitations for liquidated damages.  (*Id.* at p. 845.)  It is not anomalous

for a plaintiff pursuing different theories of recovery under a statute to have those

theories subject to different limitations periods.

     Nor does this place Pompey in the untenable situation courts have cautioned about

with discretionary penalties of "being unable to determine the applicable statute of

limitations until after trial …."  (*Jensen v. BMW of North America, Inc.* (1995) 35

Cal.App.4th 112, 133.)  The statute in question in *Jensen* allowed, but did not require, the

court to award a penalty up to two times the amount of actual damages "If the buyer

establishes that the failure to comply was willful …."  (§ 1794, subd. (c).)  Since, even if

the plaintiff proved a willful failure to comply at trial, the award of excess damages was

subject to the court's discretion, applying a shortened one-year limitations period placed

the plaintiff in an untenable position.  (*Jensen, supra*, at p. 133.)  A plaintiff in that

situation could find himself awarded two times actual damages after trial, with the

paradoxical result of placing his claim beyond the statute of limitations.  Unlike *Jensen*,

however, the remedy in section 2983.1 is not within the discretion of the court to award,

---

[12]    Pompey claims this case is distinguishable because the plaintiff there sought a statutory remedy, which Pompey claims not to seek.  However, in describing the relief sought in this case, even in the briefing here, Pompey makes *express* reference to the remedies provided by sections 2983 and 2983.1.  In his respondent's brief and cross-appeal, Pompey states, "In the present case, the remedy provided by [the] ASFA for the dealer's violations … is that the contract 'shall not be enforceable' and the buyer 'may elect to rescind the contract and return the vehicle.' Civ. Code, §§ 2983[, subdivision ](a), 2983.1[, subdivision ](e)."  These are *statutory* remedies, strictly set, imposed without reference to damages or wrongdoing, and concerning which the court's ability to engage in any kind of equitable balancing is significantly limited, as described above.

but rather the plaintiff to select. (*Id.*, subd. (e) ["*the buyer* may elect to … rescind the contract and return the motor vehicle"] (italics added).)

In sum, the rescission-and-restitution remedy imposed by sections 2983 and 2983.1 is not equitable in nature. It is defined by statute without regard to the wrongdoing or blameworthiness of either the consumer or the dealership. It does not matter if the consumer suffered actual damages by the dealer's failure to comply with the ASFA. The statute, as amended, significantly limits the court's ability to engage in balancing that ameliorates the harshness this statutory remedy works upon the dealer. The only exceptions allowed are both set by the statute itself and exceedingly narrow. Given this, and given the references to these remedy sections as a penalty within the legislative history of the ASFA, we find the rescission-and-restitution remedy of Civil Code sections 2983 and 2983.1 is a penalty and, therefore, subject to the statute of limitations set forth in Code of Civil Procedure section 340.

## DISPOSITION

For the reasons given above, we reverse this matter for further proceedings not inconsistent with this opinion. The Bank is awarded costs on appeal.


MEEHAN, J.

WE CONCUR:


HILL, P. J.


SNAUFFER, J.


20.